BENJAMIN FARNHAM *versus* WILLIAM L. O'BRIEN.

While the common law doctrine is admitted, that there must be proof of a consideration to support an unsealed written contract, the position cannot be maintained without limitation, that a moral obligation is a sufficient consideration. There are many moral duties, which cannot be enforced at law, although a verbal or written promise may have been made to perform them.

Where one person has voluntarily received a benefit from another, not gratuitously conferred, or has been the occasion, without sufficient excuse, of loss or injury to another, there arises a moral obligation to compensate him for the benefit received or the loss occasioned; and the law will enforce the performance of this duty, if some statute, or rule of public policy, providing for the general good even at the expense of individual loss, does not interpose.

A contract, void by the statute of frauds, from which a party might otherwise have derived a future benefit, is not a legal consideration for an express promise; but if one party, by such contract, has induced the other to perform in part, or to incur expense in preparations to perform, while he refuses him the future benefit of the contract, the loss and injury thereby occasioned is a valid consideration for a promise to make compensation therefor.

EXCEPTIONS from the Western District Court, GOODENOW J. presiding.

This was an action of assumpsit on an account annexed to the writ, and a special count. To sustain the action the plaintiff introduced a letter written to him by C. R. A. of which this is a copy.—

" Cornish, Oct. 15, 1840.—Mr. Farnham,—I am under the necessity, in consequence of unexpected circumstances, to say to you, that my house will not be in readiness for you so soon as you may have expected, and under the present circumstances

it will not be best for you to bring any more of your goods. I shall feel bound to return your goods to Alfred or settle with you for the disappointment.

"Yours—W. L. O'Brien."

Mr. A. testified that he wrote said letter for O'Brien, but had no previous authority to write it; that he was coming to Alfred, where Farnham lived at the time, and was instructed to deliver a message to said Farnham; that he did not see Farnham, and wrote the letter aforesaid, and on his return to Cornish, he informed O'Brien what he had written, who approved of the same and said it was right.

Testimony was then introduced by the plaintiff, showing that the defendant in the month of August, 1840, had agreed by parol to let his tavern stand, at Cornishville, to the plaintiff for one year at a rent of $125. To the admission of this and all other parol evidence the defendant objected on the ground that the contract was within the statute of frauds. The District Judge ruled, that the objection was good as to the contract for letting the tavern, but that the parol agreement imposed upon the defendant a moral obligation, which was a good consideration for the express promise contained in the letter written by A. and that under that promise, the plaintiff might show any expense he had been to in moving goods to Cornish, and the injury in not having the stand to occupy as a tavern, or the extent of the damages he sustained by reason of the disappointment. The plaintiff then introduced evidence showing, that sometime in September, 1840, he had moved one two-horse load of furniture from Alfred to Cornish, and tending to prove that it was put into the tavern house for which he had agreed; that he bought a tavern sign and had it varnished and lettered for said tavern house; that he had made three journeys from Alfred to Cornish for the purpose of fitting up and occupying the tavern, and that in December, 1840, the plaintiff removed the goods from said tavern house, where he had carried them. And also evidence showing the profits he would have made by occupying said tavern for the year as agreed.

The defendant contended that he was only bound to return

said furniture to Alfred, or settle for the disappointment to the plaintiff for not reconveying the same. Also, that damages could not accrue to the plaintiff for his particular items of expense, and also for injury in not having the tavern, denying that any damages for injury in not having the tavern could be allowed him in any event.

The District Judge charged the jury, that the action was for breach of contract, and to recover damages for not performing the same; that the contract, being by parol, no damages could be recovered, but for the subsequent letter ratified by the defendant; that the defendant was under a moral obligation to the plaintiff, which if they believed the contract was made as alleged, and broken by the defendant, was a sufficient consideration for his promise in the letter, that the letter might be regarded as a civil intimation, that the defendant would not let his tavern stand to the plaintiff, but of this they would judge; that by the letter the defendant promised to return the goods to Alfred or settle for the disappointment; that it was not contended that the defendant had returned the goods or offered to do so; that he should leave it to the jury to determine what was intended by the defendant by the term "disappointment" in the letter aforesaid, whether he intended only to engage to settle for the disappointment in not returning the goods to Alfred, as contended for by the defendant's counsel, or whether he intended the disappointment to the plaintiff in not having the tavern stand according to the alleged parol agreement. His impression was, that the latter was what was intended, and if such should be their opinion, they should give such damages as they believed the plaintiff had sustained in consequence of the loss of said stand, if they were satisfied that it was without the fault of the plaintiff, or without any neglect of his to comply with the terms of the agreement; that the stand was withheld from him, and that he was ready to perform on his part; that they could determine from the whole evidence, whether it was not an undertaking to indemnify him for the loss he had sustained in time and money in making preparation to remove to Cornish, and in removing his goods

there, purchasing a sign, having it prepared, &c.; that if the plaintiff had been led to make these arrangements by the act of the defendant, they would judge whether it was not reasonable to suppose that he intended to indemnify him for them.

The jury returned a verdict for the plaintiff, assessing damages in the sum of seventy-five dollars.

To the rulings and instructions of the Court the defendant excepted.

*Clifford*, for the defendant, contended that the rulings and instructions of the District Judge were erroneous.

A moral obligation is not a sufficient consideration to support an express promise in the broad and unqualified sense laid down in the instruction to the jury, or in any sense within the range of the facts in this case. A moral obligation is a sufficient consideration for an express promise only in cases, where there has been some pre-existing legal obligation, which has become inoperative by positive law. An express promise can only revive a precedent good consideration, which might have been enforced at law, had it not been suspended by some positive rule of law. 3 Bos. & Pul. 249, note (a); 3 Pick. 207; 15 Pick. 159; 1 Metc. 520; 2 Barn. & Adol. 811; 8 Ad. & Ellis, 467; 7 Conn. R. 57; 16 Johns. R. 281, and note; 2 Kent, (2d Ed.) 465; 13 Johns. R. 257. In the present case, the parol agreement was within the statute of frauds at the moment it was made, and never was binding or operative. The confusion on this subject has grown out of two cases in the first of Cowper, 284, and 290. An examination of the cases cited will show, that those in Cowper have been much restricted.

The instruction is erroneous, because it alleges, that the parol agreement "to let," was a good consideration for an express promise in the letter "to return the goods to Alfred or settle for the disappointment." The moral obligation resting on the defendant, if any, was to let his tavern to the plaintiff. This could not form a valid consideration to do an entirely different thing, but merely to do that. 7 Conn. R. 57; 3 B. & P. 249, at the close of the note. A repetition of a promise

within the statute of frauds does not revive it, or give it validity. 5 Greenl. 352.

The Judge's construction of the term "disappointment" was erroneous, and calculated to effect the rights of the defendant injuriously. It opens the door to proof wider and broader than the expression will warrant. His informing the jury, that they might put their construction upon it, is inconsistent with his own construction, and calculated to mislead the jury.

The promise in the letter was a mere *nudum pactum,* neither a benefit to the defendant, nor an injury to the plaintiff, and not binding. 4 East, 455 ; 18 Johns. R. 149 ; 7 Mass. R. 22.

But there was no promise made. The letter merely contained a proposition, which was not accepted. Both parties must be bound, or neither is. 1 Com. Dig. 411 ; 5 East, 16 ; 3 Greenl. 340.

It was also contended that the instruction with respect to the defendant's "undertaking to indemnify him (the plaintiff) for the loss he had sustained in time and money," was so clearly erroneous as to preclude argument.

*N. D. Appleton,* for the plaintiff, contended that the rulings and instructions of the District Judge were correct, and supported by numerous authorities, ancient and modern.

Where a man is under a moral obligation which no Court of law or equity can enforce, and promises, the honesty and rectitude of the thing is a good consideration. 2 Black. Com. 445, and Christian's note, 3 ; Chitty on Con. (5 Am. Ed.) 46 ; 1 Dane, c. 1, art. 8, § 1 ; 2 Stark. Ev. 54 ; 1 Com. on Con. 24 ; Buller's N. P. 129 ; 1 Selw. N. P. 1 ; 1 Esp. Dig. 95 ; Cowper, 284, and 289 ; 2 East, 505 ; 4 East, 76 ; 7 East, 231 ; 3 Taunt. 311 ; 5 Taunt. 36 ; 2 B. & Adol. 811 ; 3 Mass. R. 438 ; 6 Mass. R. 43 ; 15 Mass. R. 93 ; 2 Caines, 150 ; 14 Johns. R. 378 ; 2 Binney, 501 ; 5 Ver. R. 175 ; 14 Johns. R. 468 ; 2 Stark. R. 153.

Attempts have been made to limit and qualify the generality of the principle broadly laid down, that a moral obligation is a sufficient consideration for an express promise. Most of the

cases cited for the defendant are of this class. But they all go to bring the present case within the rule as limited and qualified.

The contract between these parties was made on a good and sufficient consideration, and would have been valid in a court of law, but for the statute of frauds. This was a good and sufficient consideration for the express promise to pay, contained in the letter.

The proposition advanced in the argument for the defendant, that this is a sufficient consideration " only in cases where there has been some pre-existing legal obligation," is not sustained by the authorities cited to support it. The cases were commented upon, and the conclusion drawn, that not only they did not sustain the position taken by the counsel for the defendant, but that they did justify the ruling of the Judge.

The contract was valid, were it not for the statute of frauds ; and where that statute is not interposed, such promise would enable the plaintiff to recover. 17 Wend. 71. The original agreement was not void, but voidable only. 6 East, 602 ; 15 Mass. R. 92 ; 2 T. R. 763 ; 2 Dev. & Bat. 300.

The contract was valid because it was partly executed. Cowper, 294 ; 15 Mass. R. 92.

The express promise in the letter was to do precisely what honesty and rectitude required of the defendant, after refusing to complete the contract.

The proposition in the letter required no formal acceptance ; and if it did, the commencement of the suit upon it, was sufficient to prove its acceptance.

No one contends, that the mere repetition of the original promise would make it any more valid. But here it was in substance repeated in writing, and the letter may be considered a recognition of the parol agreement, sufficient to take it out of the statute of frauds. 15 Pick. 159.

The construction of the letter, intimated by the Court and adopted by the jury, was the natural, fair, and proper construction, and was properly submitted to the jury. 16 Maine R.

79; 17 Maine R. 402; 1 Stark. Ev. 462; 1 T. R. 180. The rule of damages was correctly stated. 17 Wend. 71.

The opinion of the Court was drawn up by

SHEPLEY J. — While the common law doctrine is admitted, that there must be proof of a consideration to support an unsealed written contract, the position cannot be maintained without limitation, that a moral obligation is a sufficient consideration. There are many moral duties, which can never be properly enforced at law, although a verbal or written promise may have been made to perform them. Under certain circumstances there may be a very strong moral obligation to feed one who is hungry, or clothe one who is naked, or relieve one from suffering, or from peril; but no one would think, that the moral obligation acquired any additional strength from a promise to perform it. Nor would any one conversant with the doctrines of the common law consider, that these would compel the performance of such a promise. Other instances of moral duties of a like character have been presented in some of the decided cases. Judicial and other minds, perceiving that the position could not be received without limitation, have attempted to state some general rule or principle of limitation. The limitations presented have not always appeared to be satisfactory. The one contended for by the counsel for the defendant, " that a moral obligation is a sufficient consideration for an express promise only in cases, where there has been some pre-existing legal obligation, which has become inoperative by positive law," finds some support in the decided cases. But the case of a minor, who has bargained for property and receives the benefit of it, and has when of age promised to pay for it, is not one presenting a pre-existing legal obligation. And yet such a promise is generally admitted to be binding; and is often put as an example to illustrate the alleged rule, that a moral obligation is a sufficient consideration for a promise. And no case has been found, which denies, that a promise made by one of age to pay a debt contracted in infancy is valid.

VOL. IX. 61

Farnham *v.* O'Brien.

When one person has voluntarily received a benefit from another, not gratuitously conferred, or has been the occasion, without sufficient excuse, of loss or injury to another, there arises a moral obligation to compensate him for the benefit received or the loss occasioned. And the law would enforce the performance of this duty, if some statute or rule of public policy providing for the general good, even at the expense of individual loss, did not interpose. In such cases the statute or rule of law would not be violated, if the person, who had received the benefit, or occasioned the loss, should voluntarily make compensation. And when he has promised to make compensation the moral obligation arising out of such benefit received, or loss occasioned, will be a sufficient consideration for it. Mutual promises, each for the other, are considered a sufficient consideration. But when such promises are so made, that the law will not enforce the performance of them, the parties cannot be supposed ordinarily to be either injured or benefitted. Neither receives a present benefit or suffers a present injury. And if the law will not require the performance, and there is no attempt to perform made by either party, there is no moral obligation arising out of a refusal to perform, binding either to make compensation for any expected gains or losses. But so far as one may by such promises, before they are retracted, have induced the other to perform in part, or to incur expense in a preparation to perform, while he refuses him the benefit of the contract, he would cause him to suffer loss. There is much difference between anticipated gains and a benefit already received or a loss experienced. By the application of these principles the case may be decided. It appears, that in the month of August, 1840, the defendant agreed, that the plaintiff might occupy his tavern house for one year, and the plaintiff agreed to pay him therefor the sum of one hundred and twenty-five dollars. This agreement was not made in writing and signed by the parties. The *statute* then in force, c. 53, § 2, provided that all leases not in writing and signed by the parties should have the force and effect of leases or estates at will only. The argument for the plaintiff there-

fore, that the contract remained unimpaired, although the law would not enforce a performance of it, fails, for the statute reduced the contract to a lease at will. And it will be perceived, that to consider the contract as continuing to exist for a year, and to allow the plaintiff to recover damages for the expected gains during that time, would be alike a violation of the statute provisions and the principles before stated. For it being but an estate at will, either party might determine it even before a change of possession. And this appears to have been done. And it does not appear, that the plaintiff has suffered other actual loss or injury, than was occasioned by the removal of some of his goods to and from the house, by the journeys made to prepare for his removal, and by the expense incurred in the preparation of a tavern sign. And according to the principles before stated and without a violation of the provisions of the statute, the plaintiff may perhaps recover on the second count in his writ. For if the language used in the letter approved by the plaintiff, could be construed into an engagement to regard the agreement originally made, still binding so far as to make it the basis of a compensation for expected gains for one year, the provisions of the statute would prevent the plaintiff from setting up such a contract.

*Exceptions sustained and a new trial granted.*