# CHADWICK *v.* KNOX.

A promise to pay for services and expenses in procuring a pardon for a convict in the State Prison, is not illegal or invalid.

It would be otherwise, if the parties contemplated the resort to any means or influences of a dishonest or illegal character.

A promise, voluntarily made, to pay for such services by the prisoner, after a pardon obtained, will be binding, if the services were free from objection, though they were originally rendered, in part or wholly, from kindness.

A prisoner, after his discharge, promised a person who had voluntarily and without solicitation performed services in procuring his discharge, that he would work for him in payment for those services, and thereupon began and continued to labor for him to that amount, cannot recover for such labor.

ASUMPSIT, for work and labor, &c. The defendant filed a set off, consisting chiefly of services and expenses, performed and laid out in obtaining a pardon for the plaintiff, when he was imprisoned as a convict for crime in the State Prison of Maine, at Thomaston. The case was referred to an auditor, who made a report, allowing the plaintiff, on his claim for work done for the defendant in May, June and July, 1850, the sum of $36, and the defendant, on his set-off, the sum of $37,65. The auditor further reports that, at the time the plaintiff commenced the work for the defen-

dant, he offered to work and pay him for what money he had had of him, the kindness he had done him, and for his trouble in the matter of the plaintiff's pardon. It did not, however, appear that the amount of the defendant's claim against the plaintiff in that matter, was then or while the work was done, known to the plaintiff, nor was any definite period fixed during which he was to labor for the defendant.

The parties agreed that this case should be transferred to the superior court for their determination, and that judgment be rendered for the plaintiff or the defendant, and in such manner as the court should order.

*N. & G. N. Eastman,* for the plaintiff.

It was contended by the counsel for the defendant, in the court of common pleas, and may be again urged, that the plaintiff ought not to maintain his action, because the declaration of the plaintiff, when he commenced work for the defendant, was evidence of a contract, which he after-wards executed by his labor. This declaration was con-tained, as the case finds, in the plaintiff's offer to work and pay him, the defendant, for what money he had had of him, the kindness he had done him, and for his trouble in the matter of the plaintiff's pardon. To this position we answer, that the case does not find that the plaintiff worked to repay the defendant. The language of the plaintiff was loose and general in its nature, and could be no proof of an agreement. The case finds respecting it, that it did not, however, ap-pear that the amount of the defendant's claim against the plaintiff, in that matter, was then or while the work was done, known to the plaintiff, nor was any definite period fixed during which he was to labor for the defendant.

The ignorance of the plaintiff respecting the amount of the defendant's claim, and the want of a definite period of labor by which to pay the same, exhibit, in a clear light, that said declaration was not understood to be an agree-ment or contract to labor.

Furthermore, it does not appear from the case that the defendant claimed any thing of the plaintiff, when the latter addressed him as stated, or that he accepted the services of the plaintiff.

The fact of the plaintiff working for the defendant, then, proves nothing for the defendant, since it is uncertain that he made any claim against the plaintiff before this action was commenced. He might have considered another his debtor in the premises.

As it is not apparent, or even more than possible, that the defendant regarded the plaintiff as his debtor, or what amount was to be paid, or that any definite period was fixed during which the plaintiff was to labor for the defendant, in payment for said money and services, or that the defendant accepted his offer to work, the declaration aforesaid cannot be regarded as any evidence of a contract, but must be deemed to be a mere expression of gratitude.

The plaintiff, then, if we are correct, is entitled to maintain his suit, and the only remaining question is in regard to the set-off. Respecting that we urge that we should suffer no deduction from our account beyond the first item of the set-off, money lent to the plaintiff, if even for that, for the allowance of the remainder, would unsettle a well-established rule of law, to wit: that " any contract which can prevent or impede the due course of public justice, is also invalid." Chitty on Contracts 582, 583 ; *Norman* v. *Cole,* 3 Esp. 253.

From these authorities, it is evident that the law will not regard a promise to pay money to hinder its due execution, being jealous of fraud, and requiring that all services to procure pardons shall be gratuitous. If a man cannot receive money for " using his interest to procure the pardon of a convict," how can he recover moneys which he may have expended to pay another for his services, and, if the counsel shall be regarded as his agent, as, indeed, he must

Chadwick *v.* Knox.

be, it would be truly singular for the principal to recover for the acts of the agent, and be refused pay for his own.

If money, paid for the services of assistants, is allowed, on what principle can the claim for his own services be refused ? Yet the latter cannot be allowed, if the authorities cited are law.

In fact, will the court permit a party, in a matter of this nature, to charge for " cash paid counsel," in getting a pardon from the State Prison, for " cash paid expenses," " to consult counsel and high sheriff," and have recompense for his services, " in consulting counsel and travelling about, getting signers to petition for plaintiff's pardon from State Prison," signers many of whom were either strangers to the prisoner, or ignorant of the circumstances of his conviction, or indifferent to all things connected with him, and signing only by request, or may be, all of them strangers, or ignorant or indifferent as aforesaid, and thus prevent or impede the due course of public justice ? Such a course would throw open wide the doors of misrepresentation and fraud, towards the pardoning power of the State, and cause the law to lose much of its terror to evil doers.

*Jordan & Mc Crillis*, for the defendant.

The case finds that the defendant, in the years 1848 and 1850, expended money and rendered services for the plaintiff, in the procuring of his pardon, amounting to the sum of $37,65 ; that subsequently the plaintiff offered to work and pay him, the defendant, for what money he had had of him, the kindness he had done him, and for his trouble in the matter of the plaintiff's pardon ; and that immediately after this offer, or rather at the time he made it, he commenced work for the defendant, and continued till the value of his services amounted to $36. The defendant contends that this is evidence of a contract executed ; that the plaintiff was honestly and justly indebted to the defendant in the sum of $37,65, which he was morally and equitably bound

to pay, and that knowing and understanding this, he offered to pay the defendant by his labor, and the fact that the plaintiff immediately went to work after he made his offer, proves conclusively that the defendant accepted it; and that both parties mutually understood at the time that the plaintiff's labor was done in payment of the defendant's claim. It being, then, mutually agreed and understood that the plaintiff's labor was done in payment of the defendant's claim, even if the contract was invalid, as the plaintiff contends, (and which we deny,) it is a well-settled principle of law, that the plaintiff cannot recover money paid under an illegal contract, nor for any thing done or executed under it, for, *in pari delicto potior est conditio defendentis.* . *Worcester* v. *Eaton*, 11 Mass. Rep. 368, and cases there cited.

The fact that the plaintiff made no claim for his services for more than three years after they were rendered, has a very strong tendency to show that he understood the contract to be, as the defendant has alleged, and as we think, conclusively proved. It is true, that the defendant filed his account in set-off, yet this does not alter its nature as a payment. It was done out of abundant caution, to save all the defendant's rights, counsel not knowing at the time precisely what the defendant's evidence might turn out to be.

It is objected that the language of the plaintiff was loose and general. We reply that it was particular and specific in its character; that it was neither doubtful nor ambiguous, but clear, positive and distinct. It was to work and pay the defendant for what he had had of him, the kindness he had done him, and for his trouble in the matter of the plaintiff's pardon. All the defendant alleges is, that the plaintiff's labor was done in payment of the defendant's claim for money expended and services rendered in this very matter, precisely what the plaintiff agreed to do, and did do, and which was accepted by the defendant as payment. What other or plainer language could the plaintiff have

Chadwick *v.* Knox.

made use of? If it does not mean what the defendant alleges it does, what other construction can be put upon it?

It is wholly immaterial whether or not the plaintiff knew, at the time he commenced work, how much the defendant's claim was. The presumption is that he did know, and if not, it was his own fault, and not the fault of the defendant. He might have ascertained, on inquiry. He agreed to work and pay the defendant's claim, whatever it might be, and the labor so performed must be applied in payment of that claim, as far as it goes. If no period was fixed upon, during which the plaintiff was to work, he is entitled to such compensation as his services were reasonably worth, and could recover only for an excess beyond the defendant's existing bill.

If the defendant made no claim against the plaintiff, he would have so stated, when the plaintiff offered to work and pay him; and the fact that the plaintiff went to work immediately upon making the offer, and the defendant suffering him to do so, is conclusive evidence that he did so claim, and that he expected the plaintiff was paying him by his work.

Upon this branch of the case, then, we think the plaintiff's positions are wholly untenable, and that he is not entitled to recover. It is further contended by the plaintiff that the contract is illegal, upon the principle that "any contract which can prevent or impede the due course of public justice, is invalid." In determining whether a contract is illegal or not, it is necessary to inquire into the motives, objects and purposes of the contracting parties. To render a promise illegal, so as to vitiate a contract, it must appear to have been made for the purpose of gain, and not merely from motives of kindness and compassion. *Commonwealth* v. *Pease*, 16 Mass. Rep. 91; *Ward* v. *Allen*, 2 Met. 53.

It does not appear that the defendant assisted the plaintiff in obtaining his pardon for the purpose of gain, but it does appear that he acted from motives of kindness and

compassion.   The plaintiff was in prison, poor. and no friend to apply to, in his extremity, except his uncle, the defendant. He believed that if his case was fairly laid before the pardoning power, it would be favorably acted upon.   He desired the defendant to do this, and he did so, and in so doing he expended $29, 65 of his own money, while his own services amounted to only the trifling sum of $8.   Would the defendant have expended so much money with a very doubtful prospect of ever being repaid, merely for the purpose of getting $8 for his trouble, and by no means certain of that? Men do not ordinarily act in this manner.   No sane man would.

The constitutions of Maine and New Hampshire place the pardoning power in the hands of the executive for wise and beneficent purposes.   This power is often exercised, and that, too, for the public good.   If, then, it is legal, just and right to exercise this power in behalf of a prisoner, how can it be illegal, unjust and wrong for a person to lay the case of a prisoner before this power for a hearing?   How can it be for the public good to pardon a prisoner, and yet hostile to public justice, to prepare and fairly present his case to the pardoning power?   How can any case be brought to the notice of the executive?· Not by the prisoner, for he is in a situation to preclude him from so doing.   It must be done by a third person, then, who will be subjected to some expenses in preparing the case for a hearing.   Every prisoner, we contend, has a legal right to be heard before the governor, and if so, he has a right to employ any one to assist him, and his contract to pay him would be binding.   Why not?   It is not illegal or immoral.   It is in violation of no law, but in conformity to a constitutional provision, nor can it impede, if rightly used, the due course of public justice.   If it is right to pardon, it is right for a prisoner to be heard ; and if he had a right to a hearing, he has a right to employ some one to prepare his case for him, and, as we contend, is legally bound to pay, if he does so.

Chadwick *v.* Knox.

These are every day occurrences, and cannot impede public justice, unless there be evidence of a prostitution of official station, or interest with the pardoning power, which, we think, is a distinction to be made in cases of this kind.

*Eastman*, in reply.

Our answer to the defendant's argument is, that no special contract is proved, and, therefore, none was executed. There was no more between these parties than a mere running account. The delay of the plaintiff in putting his demand in suit, of itself proves nothing, since men generally are indulgent, and do not sue their debtors until after much waiting.

As for the abundant caution of the counsel in filing his set-off in this action, because he did not know precisely what his client's evidence might turn out to be, this is an unwarranted and unsupported statement. The set-off was filed, and the case finds no mention of a special contract in the pleadings. It is a fair inference from the course of the counsel in this matter, that he did as he was instructed in the case, before the necessity of making out an executed contract was apparent.

The language of the plaintiff to the defendant is called particular and specific. Would not these words be applicable, as they are in this connection, if the plaintiff had worked for the defendant not merely in May, June and July, 1850, but during the next three years? Again, if those words are so important, why, if the plaintiff intended his labor to repay the defendant, and to earn only enough to satisfy the defendant, does not the defendant prove more of the plaintiff's expressions, for in that event he would naturally have spoken on the subject. The absence of such evidence is conclusive proof that he did not work under a contract, as is contended.

In regard to the authorities cited by the defendant's counsel, to except this set-off from the rule of law, as laid down by Chitty and others, they are not in point for the defen-

Chadwick v. Knox.

dant. They refer to cases of suppression of criminal prose-
cutions, and to none other. They, however, make for the
plaintiff, inasmuch as they exhibit conclusively that the law
will not permit money to be gained by opposition to her
ends.

It is contended, in the next place, that this rule is not
adapted to our State. It will answer in England, but not
here. We are unable to perceive any reason why it should
not obtain here also. With it the sentences of our courts
are respected and fulfilled; without it law would speedily
become powerless, and justice be but a name.

BELL, J. The most material question, presented by this
case, relates to the claim of the defendant for compensa-
tion for his time and expenses, in obtaining a pardon for the
plaintiff, who was, at the time of the services, a convict in
the State Prison of Maine.

There is nothing stated in the case which tends, in any
degree, to cast suspicion upon the propriety or legality of the
particular measures adopted by the defendant, to obtain a
pardon in this case, if there are any measures which can be
legally and properly used for such an object.

It is not at once apparent that it is not lawful and proper
for a party who is suffering the punishment of crime, to ap-
ply to the pardoning power for a remission of his sentence;
and, so far as we are aware, no censure has been regarded
as attaching to such an application, either in law or morals.
It seems to us equally reasonable for any other person, who
believes it his duty to make such application in behalf of
another, to present the case to the executive, with such peti-
tions, memorials, statements of facts and evidence as are
suitable to satisfy the pardoning power of the propriety of
the relief desired, and we think no censure can be justly
attached to any person for his exertions in such a case, if
the measures adopted are consistent with the facts of the
case, and with the truth and honesty of all parties concern-

Chadwick *v.* Knox.

ed, while any effort to obtain such pardon by falsehood, and misrepresentation, or by any species of fraudulent contrivance, or by prostituting the influence resulting from official station or from personal relation to the pardoning power, is entirely forbidden by law.

A person in prison can do little to aid himself in bringing his case to the consideration of the executive. For every thing that must be done without the walls of the prison the convict is compelled to rely on the assistance of those who have their liberty. Such assistance may be afforded from motives of charity and compassion, or the motive may be in part kindness and in part an expectation that the party relieved will be ready to afford a suitable compensation for the services and expenses; or the party in prison may employ another to do such acts as may be rightfully and properly done for his relief, and contract to pay him for his services and to repay him his expenses. Such a contract, if the parties contemplate only a resort to legal and proper measures, is free from any just exception, and binding upon the parties.

There is here no evidence of any such contract actually made before the performance of the services charged. So far as appears by the case, the services in this case were rendered either from compassion alone, or from this motive and a hope that the services would be, at some time, compensated. It is, perhaps, of little moment which of these is the fact. The defendant, in neither case, would have any legal claim against the plaintiff, merely from the rendition of the service. It is settled that no man can do another an unsolicited kindness, and make it a matter of claim against him; and it makes no difference whether the act was done from mere good will or in the expectation of compensation. Unless the party benefited has done some act from which his assent to pay for the service may be fairly inferred, he is not bound to pay. *Reason* v. *Wirdnam*, 1 C. & P. 434; *Pelly* v. *Rawlins*, Peak's Ad. Cas. 226; *Alexander* v. *Vane*, 1 M.

& W. 511; *Parker* v. *Cram,* 6 Wend. 647; 1 Sel. N. P. 48; 2 Greenl. Ev. 83.

It is a general rule, too, that a past consideration is not a valid foundation of a contract or promise, unless the act has been done at the request of the party benefitted, and of whom payment is claimed. S. C. & 1 Step. N. P. 244; *King* v. *Sears,* 2 C. M. & R. There is, in this case, no direct evidence of any request, on the part of the plaintiff to the defendant, to render the services and incur the expenses charged. But direct evidence is never necessary to prove such request. A promise to pay for a service rendered at a former time, where no direct evidence of assent or agreement can be shown, is competent evidence of such previous assent, or request, or agreement, and the party making such promise will not afterwards be at liberty to deny the validity of the consideration of such promise, but will be bound to pay according to his engagement. So that if the plaintiff, being aware of what labor had been performed and expenses incurred by the defendant, for his benefit and relief, had thereupon promised to pay for the same, he would be as fully bound by such promise as he would be if the same had been done in pursuance of an express contract. 1 Saund. 264; *Hunt* v. *Bates,* Dyer 272; *Seaman* v. *Price,* 2 Bing. 437; *Cooper* v. *Martin,* 4 East 76; 1 Sel. N. P. 48. The case of *Lampleigh* v. *Braithwaite,* Hob. 106, is a case directly in point. It is there held that if A. requests B. to endeavor to procure for A. a pardon, and after B. has made such endeavor, A., in consideration thereof, promises to pay him a certain sum of money, this is a good consideration. 1 Sel. N. P. 48; 1 Rolls. Ab. 11.

The present is not a case of an express promise. There is no proof that the defendant asked, or the plaintiff agreed, for the payment of the defendant's claim in direct terms, and this gives rise to the second question of the case, whether the services for which payment is now claimed by the plaintiff, were rendered upon an agreement to pay in

Chadwick *v.* Knox.

that way the defendant's claim. An auditor is appointed as a substitute for a jury, in certain cases, to hear the evidence, and find and report the facts to the court. Here, instead of reporting the facts which he finds proved, which are necessary to be shown by the one party or the other, the auditor has stopped short of his duty, and merely reported the evidence. The material facts to be proved to support the defence, were whether the plaintiff did agree to pay the plaintiff's claim by his labor, and whether the labor he then performed was done and accepted as such payment. We have examined the evidence reported, and we think it was competent and sufficient to prove all these facts; and as it was entirely unqualified and uncontradicted, we cannot doubt that the auditor must have arrived at this conclusion.

Assuming these results, the plaintiff is not entitled to recover because his services were rendered in payment of a debt. The defendant is not entitled to recover any balance, because it was only payable in work, and it does not appear that the defendant has ever asked, or the plaintiff refused to pay it in that way. There must, therefore, be

*Judgment for the defendant for costs.*