## FERGUSON v. HARRIS.

1. MARRIED WOMAN'S CONTRACTS.—Where a married woman gives her note in payment for lumber used in the construction of a house on her land, she cannot avoid the payment of this note by a plea that she, as a married woman, had no power to make such a contract.

2. IBID.—AGENCY—RATIFICATION.—When Mrs. H., a married woman, employed G. & H. to build a house for her on her land, and G. & H. purchased lumber from C., which was actually used on this house, C. charging the account on his books to Mrs. H., who afterwards, under threat of the filing of a builder's lien, gave her note to C. for the amount due, Mrs. H. is liable to C. on such note.

3. IBID.—MORAL CONSIDERATION.—In this State, a written promise to pay a debt is binding on the promisor if based upon a perfect moral obligation, even though such moral obligation did not arise from a once existing but now extinguished legal obligation. *Authorities reviewed.*

Before ALDRICH, J., Greenville, November, 1892.

This was an action by Alice C. Ferguson, as administratrix of L. B. Cline, against Mary A. Harris, commenced October 20, 1891, to recover the amount of a note given May 26, 1886, and due at one day. The charge of the judge to the jury was as follows:

Gentlemen of the jury, this is an action brought by Mrs. Alice C. Ferguson, as administratrix of the estate of L. B. Cline, now dead, against Mrs. Mary A. Harris, to recover $551.38, with interest thereon at the rate of ten per cent. from the 25th of May, 1886. This note, as alleged there in the complaint, was given to the intestate. Mrs. Harris, in her answer, admits that all of the allegations in the complaint are substantially true, and her defence is, that she was, and still is, a married woman, and that at the time this note was executed, it was not with reference to a contract made with her, nor that the debt was contracted or authorized by her, and

that neither she nor her estate received any benefit from it, etc. You will read the pleadings, and you have heard the statement that the note was signed under duress; that counsel says he withdraws, only leaving it in for the purpose of evidence in the case on other branches. Ordinarily I go right on to charge what I think is the law of a case, but counsel have presented some requests to charge.

I will read the defendant's request to charge: I. "That the power of a married woman to contract is limited, and is confined to such contracts which are as to her separate estate, and relate to the same." That is true. Under the law of this State a married woman shall have power to bequeath her property as if she were unmarried, and so on. (The court here read sec. 2037 General Statutes.)

II. "That when any person endeavors to hold a married woman liable for any contract made by her, that the burden is upon such person to prove that the contract related to and concerned the separate estate of the married woman before she can be held liable upon such contract." That is correct, as I read you the law. While she has absolute power within the limits that the law gives her, outside of these limits she cannot contract.

III. "That a married woman can not be surety to her husband or any other person, nor can she assume the obligation of her husband or any other person, unless the consideration of her assuming such debt be a release of herself from some obligation binding upon her, or some other consideration having reference to her separate estate." I so charge you.

IV. "That if the jury believe, from the evidence, that the debt for which the note of Mrs. Harris was given was the debt of Gilreath & Harris, for which they were themselves liable, that Mrs. Harris is not bound by the contract, unless the consideration of her assuming the debt of Gilreath & Harris was the release by Gilreath & Harris to her of some obligation she was due them, or was some other consideration having reference to her separate estate." I so charge you.

V. "That if the jury believe, from the evidence, that the material in question was purchased by Gilreath & Harris, and

that they incurred a debt therefor, the fact that such material was used on Mrs. Harris' house could not make the note given by Mrs. Harris for this material a contract with reference to her separate estate, unless it appears that there was a release by Gilreath & Harris to her of some obligation she was due them, or unless there was some other moving consideration having reference to her separate estate.'' I so charge you.

VI. ''That the fact that Mrs. Harris got the benefit of the material can not affect the question, if the jury believe, from the evidence, that such material was purchased by Gilreath & Harris, and that they assumed payment therefor. That such fact alone, without other consideration, does not make a note given by Mrs. Harris in satisfaction of the debt of Gilreath & Harris a contract as to her separate estate.'' That I charge, subject to the modification that she might ratify contracts made for her benefit, if it appears that she did so.

VII. ''That the fact that Mr. Cline charged the material on his books to Mrs. Harris can not make the debt her own, unless it appear either that she ordered the material herself, or authorized some one to make the purchase for her.'' That I charge you, subject to what I say hereafter, that authority may have been given in the first instance, or if, after some one bought them for her, she confirmed the purchase of them.

VIII. ''That forbearance on Mr. Cline's part to issue a mechanic's or builder's supply lien for the material can not be a valid consideration of the note, or make such note a contract with reference to the separate estate of Mrs. Harris, unless it appear that Mr. Cline had a right to issue such lien.'' Well, that is correct. Now, it is necessary for me to tell you what the law is, and I can do it better by reading the act to you—it is not long. (The court here read sections 2350 and 2351 of the General Statutes.)

IX. ''That, under the facts of this case, Mr. Cline had no right to the issuance of a builder's supply lien.'' That I decline to charge, because it is a question of fact whether he had that right or not.

Now the plaintiff's requests to charge are as follows: I. ''That an agency may be either express or inferred from circumstances,

and if the jury believe from the evidence that Gilreath, Harris & Co. superintended the building of Mrs. Harris' house, that it was built by day labor, that they purchased the material for the house, and that Mrs. Harris received and retained the benefit of such services, the agency of Gilreath, Harris & Co. for Mrs. Harris is established.'' That I charge you, together with this—if you find all of the facts necessary to constitute an agency. Now you may contract with a person in terms to act as your agent, or you may make a contract with a man to do and perform certain things for you, and not a word be said about his being your agent, yet if the contract that you make with him really makes the man act as your representative, makes him your agent, why he in law is your agent, though perhaps the term ''agency'' was not used.

II. ''That if the jury believe from the evidence that Gilreath, Harris & Co. were the agents of Mrs. Harris in buying material for the house, Mrs. Harris is bound as principal for all purchases made by them in the course of such agency, whether bought by Gilreath, Harris & Co. upon their own account or not.'' That raises a question of fact and states a proposition of law correctly. Did Gilreath & Harris undertake this work as the agents of Mrs. Harris or did they undertake it as contractors? You see the difference. If they were acting for Mrs. Harris, then they represented her. If they took it as contractors dealing with her, then Gilreath & Harris and Mrs. Harris stood at arm's length, so to speak, one dealing with the other.

III. ''That where an agent purchases goods for his principal, in the course of his agency, the principal is bound, although the agent purchased in his own name, and the seller was ignorant of the agency and charged the goods to the agent personally.'' That is correct. The maxim of the law is that he who does by another does for himself, he who acts for another acts for himself, and if an agent in the course of his agency goes on to carry out what he is instructed to do, why the principal is bound by it.

IV. ''That if the jury believe from the evidence that Mrs. Harris did not agree with Gilreath, Harris & Co. that they should build her house for a specified sum, by a certain time, in a certain way, Gilreath, Harris & Co. cannot be regarded as

independent contractors." That I refuse to charge you, because they might have made some other contract which these terms do not cover as independent contractors; they might have made an agreement not to exceed a specified sum or that it would be done in a certain time. But the idea means this: That if Gilreath & Harris had a contract with Mrs. Harris, then that contract made them independent contractors, and unless they were contractors then they must have been acting in some other way than as contractors, as stated.

V. "That if the jury believe from the evidence that Gilreath, Harris & Co. were not the agents of Mrs. Harris, but that they bought the material on their own account, and that Mrs. Harris received the benefit of the material in her house and afterwards gave her note therefor, such conduct on Mrs. Harris' part constitutes a ratification of such unauthorized act of Gilreath, Harris & Co., and she is liable on the note." That I charge you, with the modification that they not only bought this material, but used it in the building to benefit her separate estate. That request is correct, and proceeds on this theory, that a man employed as agent may employ another to carry out his transaction, that is where the agency is created in the first instance; but if a man does a certain act in the name of, or concerning another person, does it voluntarily at the time, and that person comes in and acquiesces and ratifies the conduct of this man who acts as agent, then that ratification is as complete as if it had been made in the first instance.

VI. "That a contract made by a married woman, by which she obtains building material for the construction of a dwelling house on a lot owned by her, is a contract with reference to her separate estate, and she is bound by it." That I charge you as correct; and in regard to the ratification, I hold that any contract which a married woman has the right to make in the first instance, if some one else goes forward and does what she wants done in the first instance and she ratifies that act, it is just as much hers as if she had made it.

VII. "That a married woman has the same power to ratify a contract with reference to her separate estate that she would

have had to make the original contract." I have just stated that.

VIII. "That a married woman has the power to authorize an agent to make a contract for the benefit of her separate property, and she also has the power to ratify such a contract made by one not authorized so to contract." That I charge you, pro-vided that if at the time she made the ratification she was informed and knew what she was doing, had full information.

IX. "That if the jury believe from the evidence, that the inducement which led Mrs. Harris to give this note was that Mr. Cline would forbear to file a mechanic's lien on her house, and that he did forbear, such forbearance is a good considera-tion to support the note." Well, that would depend on whether, as a matter of fact, Mr. Cline did have a right to file a mechanic's lien; if he had a right to file it, and Mrs. Harris induced him, by a promise to pay the money, not to file the lien, she would have a right to make that contract.

X. "That if the jury believe from the evidence, that Mrs. Harris received the benefit of the material furnished by Mr. Cline, and has paid no one for it, and subsequently gave her note to Cline for it, the moral obligation to pay for what she has received the benefit of is a sufficient consideration to sup-port such subsequent express promise." That I charge you, and it is this: that if you have my property in your possession, and you have not paid anybody for it, and you say to me, let me keep it and I will pay you for it, and give me a note for it, then the fact that you have got my property is the considera-tion for the note or for the promise to pay. That is common sense, and that is common justice, and it is law, too.

XI. "That giving a note upon an executed consideration, the benefit of which the maker has received, is equivalent to a previous request, and if given under these circumstances by a married woman for materials furnished and used in the con-struction of her dwelling house, it is a contract 'as to her sep-arate property,' in the sense of the act of 1882, and she is liable thereupon." That I charge you, as I charged all these requests, with reference to what I have said all along.

I don't think that there is anything else that I care to say.

Your verdict, if you find for the plaintiff—that is, that if you find Mrs. Harris should pay this note—you will calculate the interest from the date of its maturity up to to-day at ten per cent.; add the principal and interest together, if you find all that, and your verdict will be: We find for the plaintiff so many dollars; if you find that, write it out in words, not in figures. If you find for the defendant, your verdict will be: We find for the defendant.

The jury found a verdict for plaintiff for the whole amount of note and interest, and on this verdict judgment was entered.

Defendant appealed on six exceptions. The *first* exception alleged error in the modification of defendant's sixth request to charge, quoting it. The *second* exception alleged error in charging plaintiff's fifth request, and the remarks made thereon. The *third* exception alleged error in charging plaintiff's eighth request. The *fourth* exception alleged error in charging plaintiff's tenth request. The *fifth* exception alleged error in charging plaintiff's eleventh request. The *sixth* exception alleged error in the addition made by the trial judge to plaintiff's sixth request to charge.

*Messrs. Benet, McCullough & Parker,* for appellant.

*Messrs. Cothran, Wells, Ansel & Cothran,* contra.

June 12, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. This was an action brought by the plaintiff, as administratrix of L. B. Cline, deceased, to recover a certain sum of money for which the defendant had executed her note to said Cline. The execution of the note was admitted by the defendant, but she set up three defences: 1st. That she was a married woman at the time that the contract was executed, and she had no power to make such a contract. 2d. That there was no consideration for the contract evidenced by the note. 3d. That the note was signed under duress. The third defence was very properly abandoned at the trial, as there was no evidence to sustain it. As to the first defence, inasmuch as the undisputed facts show that the note was given for a bill of lumber furnished by Cline and

actually used in the construction of a house on defendant's land, which was her separate estate, it is difficult to see how such a defence could be sustained.

So that, as it appears to us, the only real controversy in the case arises out of the second defence, was there any consideration for the note? For a proper understanding of this question a brief statement of the facts is necessary. It appears that the defendant, being desirous of having a house built upon her separate estate, entered into some arrangement with the firm of Gilreath & Harris (the latter being the husband of defendant), who were engaged in the business of furnishing building materials, the nature of which was not very clearly disclosed by the testimony. The undisputed facts are, however, that the lumber for which the note was given was furnished by Cline and used in the construction of defendant's house, and the bill for the same was charged to the defendant on the books of Cline. After the lumber was furnished and so used, Cline demanded payment from defendant, who declined to pay unless Cline would deduct the amount of an account which Gilreath & Harris held against Cline, which deduction Cline declined to make, alleging that such account should be set off against a claim which he held against another firm of which Gilreath was a member. Whereupon, under a threat from Cline that he would file a mechanic's lien, the defendant signed the note in controversy.

Under the charge of the Circuit Judge (which, with the exceptions, should be incorporated in the report of the case), the jury found a verdict for the plaintiff, and defendant appeals upon the several grounds set out in the record. Without considering these grounds *seriatim,* we propose to consider what we understand to be the several questions made thereby. Inasmuch as there was no evidence that the lumber was ever charged to Gilreath & Harris on the books of Cline, but, on the contrary, it was charged to the defendant, and no evidence that Gilreath & Harris were ever held by Cline to be liable to him, the question whether the defendant, being a married woman, could assume the payment of a debt due by a third person (Gilreath & Harris), even though the debt was contracted for

articles used in the construction of a house erected on defendant's separate property and for her use, cannot properly arise in this case, and need not, therefore, be considered.

Granting, for the sake of the argument, that Gilreath & Harris, without previous authority from defendant, had ordered the lumber from Cline, we see no reason why the defendant could not, after receiving the benefit of the lumber, adopt the previously unauthorized act of Gilreath & Harris, and assume the payment for the materials used for the benefit of her separate estate; and especially would this be so in a case like this, where the undisputed testimony shows that the lumber was charged to her and not to Gilreath & Harris, thereby demonstrating that the credit was extended to her and not to Gilreath & Harris. It is very true, that if Gilreath & Harris, without authority, ordered the lumber, the defendant would have been under no obligation, either legal or moral, to accept the lumber, but might with perfect propriety have repudiated the unauthorized act of Gilreath & Harris. But when she accepted the lumber and allowed it to be used in the construction of the building which she desired constructed on her separate estate, she thereby assumed at least a moral obligation to pay for the same, and when by her subsequent express promise, as evidenced by the note in question, she agreed to pay the amount of the lumber bill, she unquestionably became legally liable therefor.

It is earnestly urged, however, that a mere moral obligation is not sufficient to constitute a valid consideration for an agreement to pay money, unless such moral obligation rests upon a previous legal obligation, the power to enforce which has been lost by reason of some positive rule of law. It must be admitted that the weight of modern authority elsewhere does seem to support the rule invoked. 1 Pars. Con., 434; 3 Am. & Eng. Enc. Law, 840. But the distinguished author first cited, who states the modern rule as follows: "A moral obligation to pay money or to perform a duty is a good consideration for a promise to do so, where there was originally an obligation to pay the money or to do the duty, which was enforcible at law, but for the interference of some rule of law.

Thus a promise to pay a debt contracted during infancy, or barred by the statute of limitations or bankruptcy, is good, without other consideration," is bound to admit that the modern rule is not "very creditable to the common law." Both of these authors admit that the rule was originally otherwise. The new departure, as it may be called, seems to rest upon a learned note to the case of *Wennal* v. *Adney*, 3 Bos. & Pul., at page 249. It seems to me, however, that a more correct view of the law is presented in a note to the case of *Comstock* v. *Smith*, 7 Johns., at page 89.

All of the authorities admit that where an action to recover a debt is barred by the statute of limitations, or by a discharge in bankruptcy, a subsequent promise to pay the same can be supported by the moral obligation to pay the same, although the legal obligation is gone forever; and I am unable to perceive any just distinction between such a case and one in which there never was a legal, but only a moral, obligation to pay. In the one case, the legal obligation is gone as effectually as if it had never existed, and I am at a loss to perceive any sound distinction in principle between the two cases. In both cases, at the time the promise sought to be enforced is made, there is nothing whatever to support it except the moral obligation, and why the fact that, because in the one case there was once a legal obligation, which, having utterly disappeared, is as if it had never existed, should affect the question, I am at a loss to conceive. If, in the one case, the moral obligation, which alone remains, is sufficient to afford a valid consideration for the promise, I cannot see why the same obligation should not have the same effect in the other. The remark made by Lord Denman, in *Eastwood* v. *Kenyon*, 11 A. & E., 438, that the doctrine for which I am contending "would annihilate the necessity for any consideration at all, inasmuch as the mere fact of giving a promise creates a moral obligation to perform it," is more specious than sound, for it entirely ignores the distinction between a promise to pay money which the promisor is under a moral obligation to pay and a promise to pay money which the promisor is under no obligation, either legal or moral, to pay. It seems to me that the cases relied upon to

establish the modern doctrine, so far as my examination of them has gone, ignore the distinction pointed out in the note to 7 Johns. above cited, between an *express* and an *implied* promise resting merely on a moral obligation, for while such obligation does not seem to be sufficient to support an *implied* promise, yet it is sufficient to support an *express* promise.

But, whatever may be the rule elsewhere, it seems to me that in this State the rule is, that "a moral obligation is a sufficient consideration to support an express *assumpsit* made after the obligation incurred. It is equivalent to a previous request. But it must be such an obligation as is denominated by moralists 'perfect;' an obligation of justice, and not of benevolence or piety merely." *McMorris* v. *Herndon*, 2 Bail., 56. In that case, Harper, J., in delivering the opinion of the court, quotes with approval the following language used by Lord Mansfield in *Hawkes* v. *Saunders*, Cowp., 290: "Where a man is under a moral obligation which no court of law or equity can enforce, and *promises*, the honesty and rectitude of the thing is a consideration." The case of *McMorris* v. *Herndon* has been expressly recognized in *Lewis* v. *Lewis*, 3 Strob., 532, and the same doctrine is announced in *Glasgow* v. *Martin*, 1 Strob., 89. These cases show clearly that the moral obligation resting upon the defendant to pay for the lumber used in the construction of her house constituted a sufficient consideration for her express promise to pay for the same, as evidenced by the note in question.

Under this view, it seems to us unnecessary to inquire more particularly into the other grounds of appeal.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.