PARK FALLS STATE BANK, Appellant, vs. FORDYCE, Respondent.

*September 16, 1931—February 9, 1932.*

630

631

632

For the appellant the cause was submitted on the briefs of *C. E. Lovett* of Park Falls, attorney, and *Bundy, Beach & Holland* of Eau Claire of counsel.

For the respondent there was a brief by *Streissguth & Fordyce* of New Ulm, Minnesota, and *Sanborn, Lamoreux & Pray* of Ashland, and oral argument by *T. O. Streissguth.*

The following opinion was filed October 13, 1931:

FOWLER, J. The bank assigns as error the conclusion of the trial court that it was under moral obligation to protect the defendant; that the action of its officers in taking over the defendant's notes was invalid for want of consideration and *ultra vires;* that there was no ratification of the transaction by either the stockholders or the directors, if in law it was subject to ratification; and claims that the bank is entitled to rescind the transaction and recover the full amount paid to the defendant for his notes less payments received by it thereon.

At the time the defendant took Van Ostrand's note and paid the $5,000 into the bank the directors of the bank had power to enter into an agreement with the defendant that the bank would protect him from loss if he would enter into the transaction as it was consummated. By the transaction the bank would reap a substantial present benefit, the reduction of the debt to them of a debtor feared to be insolvent, from $5,000 to $1,000. If the collateral received by the defendant should prove insufficient to satisfy the note he took from Van Ostrand—$4,900 was realized thereon by the trustee,—the defendant would in all probability realize a considerable sum from it, and the bank would be no worse off than if it did not enter into the transaction, as defendant's agreement to stand $1,000 of the loss would limit the bank's total loss to the $5,000 evidenced by the notes it held although it should recover nothing on the new note of $1,000

taken from Van Ostrand for the additional loan to him of that sum. The transaction was apparently to the bank's great benefit. No fraud, actual or constructive, inhered in the transaction. It is true the transaction would create a contingent liability of the bank in no way set up or appearing on its books or records, of which the bank examiners would acquire no notice or knowledge upon making their periodical inspections. But the liability would be no different from that ordinarily created by guaranty or unrestricted indorsements of a negotiable note transferred by the bank for full value. That an unrestricted indorsement binds a bank although no record of it be made would hardly be questioned, and a guaranty so indorsed for the benefit of the bank is also valid. *Hunter v. Barronett State Bank,* 203 Wis. 576, 234 N. W. 746. The trial court, while of the view that an agreement to hold harmless was not consummated for want of formal action at a directors' meeting, found in effect that such an agreement was made between the defendant and some of the directors of the bank, of whom the president was manifestly one. This being so, and the transaction having been entered into for the benefit of the bank in reliance upon the understanding that it would be carried out, and this understanding having constituted a substantial part of the consideration for the defendant's entering into the transaction, as manifestly appears from the statement in the trial court's findings "that the defendant did in fact take over these notes as an accommodation to the bank and not because he was desirous of making the loan to Van Ostrand for investment purposes," the bank might have lawfully agreed in the first place to do what finally was done, and we are of opinion that the directors might afterwards make a binding promise to do what they might have done in the first instance. The benefit originally received by the bank would constitute sufficient consideration to support such promise, although for want of perfecting the original understanding into a formal

agreement the defendant would be remediless without it. The directors' resolution of February 14, 1920, constituted in effect an executory promise by the bank upon which the defendant could have stood to recover the amount thereby directed to be paid to him, and with equal if not greater reason can the defendant stand upon the executed promise.

The trial court referred to the consideration supporting the final transaction as a "moral consideration." The plaintiff strenuously contends that for a moral consideration to be sufficient to support an executory promise, there must have been a pre-existing legal obligation to do the thing promised which for some reason, as the statute of limitations, discharge in bankruptcy, or the like, is unenforceable. But the rule is not so narrow. It is true that there are numerous cases holding that a mere moral consideration will not support a promise to pay. But it is equally true that there are numerous cases holding a moral consideration sufficient where the promisor originally received from the promisee something of value sufficient to arouse a moral as distinguished from a legal obligation. One ought, in morals, to make return for things of value not intended as a gift that he has accepted, and he ought in morals to do what he knowingly and advisedly gave one acting for his benefit and to his own hurt to understand he would do. While many cases state the rule as contended by plaintiff's counsel, that it is too narrow appears from consideration of the universally accepted rule that the promise of an adult to pay for goods purchased during minority is enforceable. Here there was originally no legal obligation. We believe that in none of the cases stating the rule so narrowly did the promisor originally receive from the promisee a thing of value for which the promisee expected payment and was given to understand he would be paid unless the original transaction was against public policy. An exhaustive note in 17 A. L. R. (p. 1299) classifies the cases involving a moral consideration under

several heads, one of which is "Moral obligation arising from what was once a legal liability, or *from the previous receipt by the promisor* of a material or pecuniary benefit." Here we have a "material pecuniary benefit" received by the bank. As stated in *Drake v. Bell*, 26 Misc. 237, 55 N. Y. Supp. 945 : "The rule seems to be that a subsequent promise founded . . . on value previously had from the promisee is binding." That a moral consideration will support a promise was originally laid down by Lord MANSFIELD in *Atkins v. Hill*, 1 Cowp. pt. 1, p. 288, and *Hawkes v. Saunders*, 1 Cowp. pt. 1, pp. 289, 290, 98 Eng. Rep. 1088, 1091.

"The principle of the rule laid down by Lord MANSFIELD is, that where the consideration was originally beneficial to the party promising, yet if he be protected from liability by some provision of the statute or common law meant for his advantage, he may renounce the benefit of that law ; and if he promises to pay the debt, which is only what an honest man ought to do, he is then bound by the law to perform it." *Earle v. Oliver*, 2 Exch. 90, 154 Eng. Rep. 418.

Lord MANSFIELD's statement in *Hawkes v. Saunders, supra,* is :

"Where a man is under a legal or equitable obligation to pay, the law implies a promise, though none was ever actually made. *A fortiori,* a legal or equitable duty is a sufficient consideration for an actual promise. Where a man is under a moral obligation, which no court of law or equity can enforce, and promises, the honesty and rectitude of the thing is a consideration. As if a man promise to pay a just debt, the recovery of which is barred by the statute of limitations ; or if a man, after he comes of age, promises to pay a meritorious debt contracted during his minority, but not for necessaries ; or if a bankrupt, in affluent circumstances after his certificate, promises to pay the whole of his debts ; or if a man promises to perform a secret trust, or a trust void for want of writing, by the statute of frauds.

"In such and *many other instances,* though the promise gives a compulsory remedy, where there was none before either in law or equity ; yet as the promise is only to do what

an honest man ought to do, the ties of conscience upon an upright mind are a sufficient consideration."

That receipt by the promisor of an actual benefit will support an executory promise is in effect held by the following additional cases: *Farnham v. O'Brien,* 22 Me. 475; *Stebbins v. Crawford County,* 92 Pa. St. 289; *Edson v. Poppe,* 24 S. Dak. 466, 124 N. W. 441; *Bagaeff v. Prokopik,* 212 Mich. 265, 180 N. W. 427; *Mohr v. Rickgauer,* 82 Neb. 398, 117 N. W. 950; *Muir v. Kane,* 55 Wash. 131, 104 Pac. 153.

We consider that this is the better rule and that it should be followed here unless, as claimed by appellant, this court has heretofore adopted the rule that a pre-existing legal obligation is essential to support the promise. *Frey v. Fond du Lac,* 24 Wis. 204, is cited in support of this contention. That it is not so essential in all cases appears from the rule heretofore stated that the receipt by a minor of goods, not necessaries, will support a promise to pay for them made after reaching majority. This is further illustrated by the rule that a promise made on a week day to pay for goods purchased on Sunday is supported by a sufficient consideration. In neither of these situations was there ever an antecedent legal obligation. The *Frey Case* does state that:

"It is a general rule that a promise to pay for a past consideration for which there is not and never has been any legal liability on the part of the party promising, does not make a contract binding in law."

The case mentions the promise of an adult to pay for goods delivered to him during infancy as an exception to this rule. The general rule stated in the *Frey Case* is quoted in *Hooker v. Knab,* 26 Wis. 511, and in *Melchoir v. McCarty,* 31 Wis. 252. In the latter, the week-day promise to pay for goods previously purchased on Sunday is stated as another exception. There well may be still other exceptions. Wherever the promisor has originally received value—material pecuniary benefit—as truly as in the case of a purchase by a minor

or on Sunday, the reason for the exception applies, and the case should likewise be made an exception. In none of the Wisconsin cases above cited holding the promise involved not enforceable, except in the *Melchoir Case,* was there previous receipt of value or pecuniary benefit by the promisor. In the *Melchoir Case* liquor was purchased and the defendant offered to prove that the seller had no license to sell, and it was held that as sale without license was a violation of statute, no recovery could be had for liquor so sold, on the ground of public policy. We consider that application of the rule stated in the *Frey Case* should be limited to instances in which the reason for it applies, and that it should not be applied to the instant case for the same reason that it is not applied to cases of purchases by infants or on Sunday.

The defendant urges that the cases holding that a moral consideration will not support a promise have no application to executed promises and that the promise here involved evidenced by the resolution to take over defendant's note has been executed. This is true as a general proposition between natural persons acting in their own behalf. A natural person, not standing in the relation of a trustee, may make a gift if he wants to. But a trustee may not make a gift of trust property nor may the officers of a bank make a gift of its funds, and if either be done, no reason is perceived why action will not lie for rescission and recovery.

As the note for $242.10 given for taxes paid by the defendant was found by the trial court to have been paid to the bank, no question as to recovery from defendant of the amount paid him therefor arises. The other small notes taken over by the bank constitute no additional item for which recovery can be claimed, as they were given for interest that had accrued on the principal note. As we have determined that the action of the bank in taking over the principal note is supported by a sufficient consideration and

valid, there is no need to consider the questions as to ratification discussed in the briefs.

The defendant asks in his brief that the case be reversed with direction to enter judgment of dismissal. But as he neither appealed from the judgment nor made a motion to review the ruling of the trial court in awarding recovery of $1,000, he cannot be heard to complain of that ruling.

*By the Court.*—The judgment of the circuit court is affirmed.

A motion for a rehearing was denied, with $25 costs, on February 9, 1932.