168 So. 196

### WEBB v. McGOWIN et al.
#### 3 Div. 768.

Court of Appeals of Alabama.
Nov. 12, 1935.

Rehearing Denied Feb. 18, 1936.

Calvin Poole, of Greenville, for appellee.

Powell & Hamilton, of Greenville, for appellant.

84

BRICKEN, Presiding Judge.

This action is in assumpsit. The complaint as originally filed was amended. The demurrers to the complaint as amended were sustained, and because of this adverse ruling by the court the plaintiff took a nonsuit, and the assignment of errors on this appeal are predicated upon said action or ruling of the court.

A fair statement of the case presenting the questions for decision is set out in appellant's brief, which we adopt.

"On the 3d day of August, 1925, appellant while in the employ of the W. T. Smith Lumber Company, a corporation, and acting within the scope of his employment, was engaged in clearing the upper floor of mill No. 2 of the company. While so engaged he was in the act of dropping a pine block from the upper floor of the mill to the ground below; this being the usual and ordinary way of clearing the floor, and it being the duty of the plaintiff in the course of his employment to so drop it. The block weighed about 75 pounds.

"As appellant was in the act of dropping the block to the ground below, he was on the edge of the upper floor of the mill. As he started to turn the block loose so that it would drop to the ground, he saw J. Greeley McGowin, testator of the defendants, on the ground below and directly under where the block would have fallen had appellant turned it loose. Had he turned it loose it would have struck McGowin with such force as to have caused him serious bodily harm or death. Appellant could have remained safely on the upper floor of the mill by turning the block loose and allowing it to drop, but had he done this the block would have fallen on McGowin and caused him serious injuries or death. The only safe and reasonable way to prevent this was for appellant to hold to the block and divert its direction in falling from the place

where McGowin was standing and the only safe way to divert it so as to prevent its coming into contact with McGowin was for appellant to fall with it to the ground below. Appellant did this, and by holding to the block and falling with it to the ground below, he diverted the course of its fall in such way that McGowin was not injured. In thus preventing the injuries to McGowin appellant himself received serious bodily injuries, resulting in his right leg being broken, the heel of his right foot torn off and his right arm broken. He was badly crippled for life and rendered unable to do physical or mental labor.

"On September 1, 1925, in consideration of appellant having prevented him from sustaining death or serious bodily harm and in consideration of the injuries appellant had received, McGowin agreed with him to care for and maintain him for the remainder of appellant's life at the rate of $15 every two weeks from the time he sustained his injuries to and during the remainder of appellant's life; it being agreed that McGowin would pay this sum to appellant for his maintenance. Under the agreement McGowin paid or caused to be paid to appellant the sum so agreed on up until McGowin's death on January 1, 1934. After his death the payments were continued to and including January 27, 1934, at which time they were discontinued. Thereupon plaintiff brought suit to recover the unpaid installments accruing up to the time of the bringing of the suit.

"The material averments of the different counts of the original complaint and the amended complaint are predicated upon the foregoing statement of facts."

In other words, the complaint as amended averred in substance: (1) That on August 3, 1925, appellant saved J. Greeley McGowin, appellee's testator, from death or grievous bodily harm; (2) that in doing so appellant sustained bodily injury crippling him for life; (3) that in consideration of the services rendered and the injuries received by appellant, McGowin agreed to care for him the remainder of appellant's life, the amount to be paid being $15 every two weeks; (4) that McGowin complied with this agreement until he died on January 1, 1934, and the payments were kept up to January 27, 1934, after which they were discontinued.

The action was for the unpaid installments accruing after January 27, 1934, to the time of the suit.

The principal grounds of demurrer to the original and amended complaint are: (1) It states no cause of action; (2) its averments show, the contract was without consideration; (3) it fails to allege that McGowin had, at or before the services were rendered, agreed to pay appellant for them; (4) the contract declared on is void under the statute of frauds.

■ 1. The averments of the complaint show that appellant saved McGowin from death or grievous bodily harm. This was a material benefit to him of infinitely more value than any financial aid he could have received. Receiving this benefit, McGowin became morally bound to compensate appellant for the services rendered. Recognizing his moral obligation, he expressly agreed to pay appellant as alleged in the complaint and complied with this agreement up to the time of his death; a period of more than 8 years.

Had McGowin been accidentally poisoned and a physician, without his knowledge or request, had administered an antidote, thus saving his ife, a subsequent promise by McGowin to pay the physician would have been valid. Likewise, McGowin's agreement as disclosed by the complaint to compensate appellant for saving him from death or grievous bodily injury is valid and enforceable.

Where the promisee cares for, improves, and preserves the property of the promisor, though done without his request, it is sufficient consideration for the promisor's subsequent agreement to pay for the service, because of the material benefit received. Pittsburg Vitrified Paving & Building Brick Co. v. Cerebus Oil Co., 79 Kan. 603, 100 P. 631; Edson v. Poppe, 24 S.D. 466, 124 N.W. 441, 26 L.R.A.(N.S.) 534; Drake v. Bell, 26 Misc. 237, 55 N.Y.S. 945.

In Boothe v. Fitzpatrick, 36 Vt. 681, the court held that a promise by defendant to pay for the past keeping of a bull which had escaped from defendant's premises and been cared for by plaintiff was valid, although there was no previous request, because the subsequent promise obviated that objection; it being equivalent to a previous request. On the same principle, had the promisee saved the promisor's life or his body from grievous harm, his subsequent promise to pay for the services rendered would have been valid. Such service would have been far more material

than caring for his bull. Any holding that saving a man from death or grievous bodily harm is not a material benefit sufficient to uphold a subsequent promise to pay for the service, necessarily rests on the assumption that saving life and preservation of the body from harm have only a sentimental value. The converse of this is true. Life and preservation of the body have material, pecuniary values, measurable in dollars and cents. Because of this, physicians practice their profession charging for services rendered in saving life and curing the body of its ills, and surgeons perform operations. The same is true as to the law of negligence, authorizing the assessment of damages in personal injury cases based upon the extent of the injuries, earnings, and life expectancies of those injured.

In the business of life insurance, the value of a man's life is measured in dollars and cents according to his expectancy, the soundness of his body, and his ability to pay premiums. The same is true as to health and accident insurance.

It follows that if, as alleged in the complaint, appellant saved J. Greeley McGowin from death or grievous bodily harm, and McGowin subsequently agreed to pay him for the service rendered, it became a valid and enforceable contract.

■ 2. It is well settled that a moral obligation is a sufficient consideration to support a subsequent promise to pay where the promisor has received a material benefit, although there was no original duty or liability resting on the promisor. Lycoming County v. Union County, 15 Pa. 166, 53 Am.Dec. 575, 579, 580; Ferguson v. Harris, 39 S.C. 323, 17 S.E. 782, 39 Am.St.Rep. 731, 734; Muir v. Kane, 55 Wash. 131, 104 P. 153, 26 L.R.A.(N.S.) 519, 19 Ann.Cas. 1180; State ex rel. Bayer v. Funk, 105 Or. 134, 199 P. 592, 209 P. 113, 25 A.L.R. 625, 634; Hawkes v. Saunders, 1 Cowp. 290; In re Sutch's Estate, 201 Pa. 305, 50 A. 943; Edson v. Poppe, 24 S.D. 466, 124 N.W. 441, 26 L.R.A.(N.S.) 534; Park Falls State Bank v. Fordyce, 206 Wis. 628, 238 N.W. 516, 79 A.L.R. 1339; Baker v. Gregory, 28 Ala. 544, 65 Am.Dec. 366. In the case of State ex rel. Bayer v. Funk, supra, the court held that a moral obligation is a sufficient consideration to support an executory promise where the promisor has received an actual pecuniary or material benefit for

which he subsequently expressly promised to pay.

The case at bar is clearly distinguishable from that class of cases where the consideration is a mere moral obligation or conscientious duty unconnected with receipt by promisor of benefits of a material or pecuniary nature. Park Falls State Bank v. Fordyce, supra. Here the promisor received a material benefit constituting a valid consideration for his promise.

3. Some authorities hold that, for a moral obligation to support a subsequent promise to pay, there must have existed a prior legal or equitable obligation, which for some reason had become unenforceable, but for which the promisor was still morally bound. This rule, however, is subject to qualification in those cases where the promisor, having received a material benefit from the promisee, is morally bound to compensate him for the services rendered and in consideration of this obligation promises to pay. In such cases the subsequent promise to pay is an affirmance or ratification of the services rendered carrying with it the presumption that a previous request for the service was made. McMorris v. Herndon, 2 Bailey (S.C.) 56, 21 Am.Dec. 515; Chadwick v. Knox, 31 N.H. 226, 64 Am.Dec. 329; Kenan v. Holloway, 16 Ala. 53, 50 Am.Dec. 162; Ross v. Pearson, 21 Ala. 473.

Under the decisions above cited, McGowin's express promise to pay appellant for the services rendered was an affirmance or ratification of what appellant had done raising the presumption that the services had been rendered at McGowin's request.

■ 4. The averments of the complaint show that in saving McGowin from death or grievous bodily harm, appellant was crippled for life. This was part of the consideration of the contract declared on. McGowin was benefited. Appellant was injured. Benefit to the promisor or injury to the promisee is a sufficient legal consideration for the promisor's agreement to pay. Fisher v. Bartlett, 8 Greenl. (Me.) 122, 22 Am.Dec. 225; State ex rel. Bayer v. Funk, supra.

5. Under the averments of the complaint the services rendered by appellant were not gratuitous. The agreement of McGowin to pay and the acceptance of payment by appellant conclusively shows the contrary.

■ 6. The contract declared on was not void under the statute of frauds (Code 1923, § 8034). The demurrer on this ground was not well taken. 25 R.C.L. 456, 457 and 470, § 49.

The cases of Shaw v. Boyd, 1 Stew. & P. 83, and Duncan v. Hall, 9 Ala. 128, are not in conflict with the principles here announced. In those cases the lands were owned by the United States at the time the alleged improvements were made, for which subsequent purchasers from the government agreed to pay. These subsequent purchasers were not the owners of the lands at the time the improvements were made. Consequently, they could not have been made for their benefit.

From what has been said, we are of the opinion that the court below erred in the ruling complained of; that is to say, in sustaining the demurrer, and for this error the case is reversed and remanded.

Reversed and remanded.

SAMFORD, Judge (concurring).

The questions involved in this case are not free from doubt, and perhaps the strict letter of the rule, as stated by judges, though not always in accord, would bar a recovery by plaintiff, but following the principle announced by Chief Justice Marshall in Hoffman v. Porter, Fed. Cas. No. 6,577, 2 Brock. 156, 159, where he says, "I do not think that law ought to be separated from justice, where it is at most doubtful," I concur in the conclusions reached by the court.