[No. 372. Decided April 18, 1892.]

# W. T. CHALK, *Appellant,* v. HARRY WHITE, *Mayor of the City of Seattle, Respondent.*

MANDAMUS—ISSUE OF BONDS—MAYOR'S SIGNATURE.

*Mandamus* will not lie to compel the mayor of a city to sign bonds which purport to make the city liable for indebtedness in excess of what it can lawfully incur, although the ordinance authorizing such bonds has been passed by the council over the mayor's veto.

*Appeal from Superior Court, King County.*

The facts are stated in the opinion.

*Tustin, Gearin & Crews,* for appellant.

*Wiley, Scott & Bostwick,* for respondent.

The opinion of the court was delivered by

SCOTT, J.—This appeal is from a judgment of the superior court of King county quashing an alternative *mandamus* against the respondent, refusing the appellant a peremptory *mandamus,* and awarding judgment against him for costs. The action was brought to compel the respondent, as mayor of the city of Seattle, to execute certain evidences of indebtedness which the appellant claimed to be entitled to have executed and delivered. The city under a former charter granted by the legislature of the Territory of Washington in 1886, ordered certain streets to be graded, and upon the completion issued to the contractors warrants upon a special fund as follows:

No. 201.                                                          $500.00.

STREET IMPROVEMENT WARRANT.

(Col. 187.)          SEATTLE, WASH., March 10, 1890.

*Treasurer of the City of Seattle:*

Pay to J. O. Martin, or bearer, the sum of five hundred dollars out of Lake avenue improvement funds, under ordinance No. 1203, not otherwise appropriated.

C. W. FERRIS, *City Clerk.*

DAVID E. DURIE, *Acting Mayor.*

Warrants of this character were issued by the city to various contractors for the improvement of streets, aggregating a large amount. Some of these warrants were assigned to the appellant, and were not paid upon presentment, presumably for the reason that there was no money in the particular fund, as their validity was not questioned, and a willingness to provide for their redemption was shown by the passage of an ordinance to fund the same, and issue in lieu thereof, certain instruments of the following tenor:

No. 74.                                          $205.80

REDEMPTION STREET IMPROVEMENT BOND.

SEATTLE, WASH., June 1st, 1891.

*To the Treasurer of Seattle:*

On or before five years after date pay to W. T. Chalk, or order, the sum of two hundred and five and $\frac{80}{100}$ dollars. This bond is payable out of Banner street improvement funds, under ordinance No. 1353, not otherwise appropriated: *Provided, however,* That any balance due and unpaid thereon at the date of the maturity thereof, shall be paid by the city of Seattle, out of the general fund, as provided by ordinance No. 1661 of said city, under which ordinance this bond is issued.

W. L. AMES, *City Treasurer.*
C. W. FERRISS, *Comptroller.*               ———, *Mayor.*

Here followed ten coupons providing for the payment of interest semi-annually.

The respondent, as mayor of the city, vetoed this ordinance upon the ground that it was void as being *ultra vires* for the following reasons: *First,* That this was not an indebtedness of the city, therefore could not be funded. *Second,* That the city had passed its limit of indebtedness and that no provision for the funding of said warrants and incurring said indebtedness had ever been submitted to the voters of said city. The council by a unanimous vote passed the ordinance over the veto. The

mayor refused to sign the instruments therein provided for upon their presentment. Upon a hearing in the court below the peremptory writ was refused upon the ground that it would in effect compel the mayor to violate the constitution of the state, the laws of the state and the charter of the city.

It was admitted that no proposition to fund said warrants or scrip had been submitted to a vote of the people, and that during all of said times the city was indebted in the full sum to which it could become indebted under the assessed valuation of the property therein at said time without an authorization by a vote of its qualified electors. The appellant contends that the respondent was a mere ministerial officer, and that the act of signing the bonds after the council had ordered them prepared and presented to him was a ministerial act only, and that he should have signed them regardless of any question as to their validity, or as to the regularity of their issue. He argues that the respondent exhausted his authority when he vetoed the ordinance. That the council having passed the ordinance over the veto thereby appropriated the money to the relator and conclusively settled his right thereto, and that the said bonds or warrants should issue as a matter of course. The appellant cites the following cases as sustaining the above: *Waldron v. Lee,* 5 Pick. 328; *People v. Flagg,* 16 Barb. 506; *Ahrens v. Fiedler,* 43 N. J. Law, 400; *Houston v. People,* 55 Ill. 398. These cases all relate to questions going to the regularity only of the various proceedings. The power to do the things attempted was possessed and the defense was that it had been irregularly exercised. The case of *People v. Dean,* 3 Wend. 438, was also cited. Here the distinction is not as clear. The power to appoint a commissioner of deeds was unquestioned, but there was no authority for the appointment of a miner to the position. The matter did not receive much considera-

tion apparently, and we do not regard any of said cases as having any force in support of the position contended for by appellant in this case unless the further proposition he contends for—that the issuing of said last mentioned bonds or warrants if valid would not add anything to the indebtedness of said city—is also well taken. It seems to us the question whether the city council had the authority to pass the ordinance aforesaid providing for the funding of the original scrip is the controlling question here. The city having reached the limit of indebtedness which could be contracted without submitting the proposed additional amount to a vote of the people, before this ordinance was adopted, it follows that if the issue of the proposed bonds was an attempt to incur any additional indebtedness the ordinance authorizing their issuance was void, and the mayor should not be compelled to sign them. While it is true that the regularity of the proceedings of a city council should not be subject to being questioned in this way, and the due execution of the city's business thus hampered and interrupted where the power to do the thing attempted is possessed, yet the argument that the mayor should be compelled to sign these bonds regardless of their validity, it seems to us, is without sanction in law or justice. If these instruments would be void if issued, it would be a bad state of affairs indeed if the mayor must be compelled to sign them and thus put the last finishing touch to their fair appearance, enabling them to be thrown upon the market and find their way into the hands of innocent purchasers, resulting in possible loss and tedious litigation and thus to the defamation of the fair name and financial standing of the city. Surely the courts in the execution of the law are not so impotent and compelled to be so blind to justice as to sanction or enforce the perpetration of such an injustice. If the proceedings had are void it is manifestly for the good of all concerned they should be so stamped at

the earliest possible moment, and it is well that these steps were taken in advance to determine their validity before harm could result to anyone. It does not appear that there is sufficient money in any of the different special funds to meet these obligations, and there can be no assurance that sufficient moneys will be forthcoming from the several special sources with which to meet them. At most the city could only be liable for a failure to take the necessary steps to collect the assessments, but these so-called bonds purport to create an additional liability—the credit of the city is absolutely pledged thereby to their full payment. If the city should sell all the real estate in the several assessment districts to pay the original scrip representing the cost of the improvements, and if such sales should not provide a fund sufficient, the city would be bound to make good the deficiency under the proposed bonds. If the creation of a liability in this way in excess of the debt limit can be sustained, it is equivalent to removing all restriction, and the constitutional provision limiting the amount to which cities might become indebted would be valueless. It is needless to consider whether the holder of such bonds if issued could under them look to the city primarily for their payment regardless of any attempt by anyone to enforce the collection of the assessments, or to make the special fund available, for their issue is unauthorized under the most favorable view of the situation that can be taken. Where the question has been directly raised the authorities seem to go no further than to hold that a city may incur liabilities beyond the debt limit for ordinary running expenses to be paid out of the current revenues, and this on the ground that such a power is absolutely necessary to the life of the municipality. No case has been called to our attention which goes to the extent that the appellant contends for in this case. It is not claimed that these particular improvements were necessary in the

sense contemplated, and, anyhow, they had already been made upon the credit of the particular districts.

We are of the opinion that the judgment of the superior court was right in the premises, and it is affirmed.

HOYT, STILES and DUNBAR, JJ., concur.

ANDERS, C. J., not sitting.