Argued May 6. decided July 20, 1909.

## NAYLOR v. McCOLLOCH, MAYOR.

[103 Pac. 68.]

MUNICIPAL CORPORATIONS—CONSTRUCTION OF SEWERAGE SYSTEM—CONTRACTS—"ETC."

1. A contract for the construction of a sewerage system, stipulating that the city may pay for the work in legally issued bonds, or in cash out of the general fund, as it may elect, but that the city shall "pay for any readvertising, etc., required to satisfy the attorney" of the contractor that the bonds are legally issued, requires the contractor to accept legally issued bonds, and not to merely accept such bonds as his attorney shall advise him are legally issued; and, where such attorney assumes that it is impossible to issue any valid bonds in any way, the contractor cannot refuse to perform because of the failure of the city to pay the cost of advertising, etc., required to satisfy the attorney of the legality of the bonds; the. term "etc." meaning other things of like character.

MUNICIPAL CORPORATIONS—POWERS.

2. Municipal corporations have no powers except such as are granted in express words by their charters, or such as are necessarily implied from those so granted, or those essential to the declared objects and purposes of the corporation.

MUNICIPAL CORPORATIONS—CONSTRUCTION OF SEWERAGE SYSTEM—PAYMENT—BONDS—SPECIAL ASSESSMENTS.

3. Sumpter City Charter (Sp. Laws 1901, p. 95), authorizing the levy of a special tax for any specific city purpose, and to issue bonds for any specific purpose, empowering the city to construct sewers, the cost of which is to be assessed to the property benefited, and setting forth a complete system for constructing sewers by assessments, etc., authorizes the city to issue bonds for the construction of a sewerage system, or to levy an assessment on property benefited, to pay for the cost thereof; a sewer being a specific city purpose.

MUNICIPAL CORPORATIONS—PAYMENT OF CLAIMS—POWERS.

4. Under Sumpter City Charter (Sp. Laws 1901, p. 95), providing that demands which the council shall pay shall be for corporate purposes, and none other, the council has no power to order the payment to a contractor of money forfeited to the city because of the contractor's failure to perform his contract; the claim for repayment not being for a corporate purpose.

MUNICIPAL CORPORATIONS—DEMANDS—PAYMENT—POWER OF MAYOR.

5. Sumpter City Charter (Sp. Laws 1901, p. 95), declaring that the mayor is the chief executive, and must exercise supervision over the general affairs of the city and subordinate officers, requires the mayor to refuse to sign a warrant for the payment of money illegally ordered by the council.

TRIAL—FINDINGS—SUFFICIENCY.

6. Where, in an action involving the construction of a contract, the court made the contract a part of its findings, and found in the terms of the contract what the parties agreed to do, a more specific finding would only be a conclusion of law from the facts found, and would be unnecessary.

EVIDENCE—JUDICIAL NOTICE—CHARTERS OF MUNICIPAL CORPORATIONS.

7. A charter of a city is a public law of the state of which the courts take judicial notice.

TRIAL—FINDINGS—SUFFICIENCY.

8. Where the court found on issues ultimately determining the controversy and necessarily supporting the judgment, other issues became immaterial.

From Baker: WILLIAM SMITH, Judge.

This is a mandamus proceeding instituted by the plaintiffs, A. L. Naylor and Charles Norlin, against C. H. McColloch, as mayor of the city of Sumpter, Oregon, to compel him to sign a certain city warrant for the sum of $600 drawn upon the treasurer of said city, which warrant was ordered issued by the city council of said city.　　　　　　　　　　　　　　　　　　　AFFIRMED.

For appellant there was a brief over the names of *Messrs. Hart & Nichols,* with an oral argument by *Mr. Julius N. Hart.*

For respondent there was a brief over the names of *Messrs. McColloch & McColloch* and *Messrs. Butcher, Clifford & Correll,* with oral arguments by *Mr. Charles H.* and *Clyde McColloch.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

1. This cause comes to this court on appeal from a judgment of the circuit court of Baker County refusing to compel defendant, as mayor of the city of Sumpter, to sign a warrant for the sum of $600, the payment of which was directed by vote of the city council. The evidence tends to show that on June 21, 1904, plaintiffs entered

into a written contract with the city of· Sumpter to con-
struct a sewerage system for the city, according to cer-
tain plans and specifications, which are not on the record,
but which from the testimony appear to be sufficiently
comprehensive to ultimately accommodate the entire or a
great portion of the city.   Plaintiffs were to be paid
$15,000 on the whole contract, payments to be made
monthly, as the work progressed and was measured, the
city to retain 25 per cent until final completion of the
entire system.   Plaintiffs were to begin work on or
before July 7, 1904.   It was agreed that the city might
pay for the work in legally issued city bonds, or in cash,
out of the general fund, as it might elect.   The contract
also contained a clause couched in the following lan-
guage: "The city of Sumpter to pay for any readvertis-
ing, etc., required to satisfy the attorney of said second
parties, that said bonds are legally issued."   Plaintiffs
also agreed to deposit a certified check for $1,000, to be
forfeited should they fail to perform their contract.   By
a course of negotiations, not necessary to detail in this
opinion, the amount was finally reduced to $600, and on
July 19, 1904, plaintiffs not having begun work as agreed
upon, the council declared the deposit forfeited, and
directed the recorder to cash the check and turn the
money into the general fund of the city, which he did.
It is a fair deduction from this statement that the plain-
tiffs were in default, and that the forfeiture was proper,
unless the city of Sumpter had defaulted in some par-
ticular as to its part of the contract, and plaintiff con-
tends that the city was in default, in that it had made
no legal provision for payment for the work in city bonds,
or otherwise, and had failed to satisfy their attorney
that the bonds, which it proposed to issue, were legal or
valid bonds.   The fact seems to be that plaintiffs' attor-
neys had advised them that the proposed bonds were
invalid and worthless, and that under the charter of the
city it could not pay for sewerage improvements out of

the general fund, or out of the sale of bonds, or in any other way than by assessments on abutting property.

We do not agree with plaintiffs' contention that the clause in the contract, requiring the city to pay certain expenses required to satisfy the attorney of the legality of the bond issue, absolved plaintiffs from the results of a forfeiture. The contract of plaintiffs is to accept legally issued bonds—not accept bonds which his attorney should advise him were of such a character. Such a construction would furnish a contractor a very easy method of evading a contract, as it would not be difficult to find an attorney who might advise a client in an emergency that any sort of a bond issue was illegal. Nor do we think that a fair construction of this clause leaves to the attorney the decision of the question as to the primary right of the city to issue bonds for the purpose proposed, but in any event was only intended to give him a sort of a general supervision of the manner in which the issue should be made. The city was to "pay all cost of advertising, etc., required to satisfy the attorney of the legality of the bond issue." Now if the character "etc." has any meaning in a contract, which is doubtful, it can only mean "and others"; that is, other things of like character to the thing specified, namely, advertising, and such other details of the issue as would make bonds, which both parties must have assumed that the city had a right organically to issue, good and valid. If the city had no right under its charter to issue bonds for the improvement, under any circumstances, then no amount of advertising and no moneys worth of "etc." could remedy this defect, and we will not assume that the parties were intending to contract for an absurdity. There are abundant authorities which hold that the character "etc.," used as it is in this contract, is meaningless: *Harrison* v. *McCormick*, 89 Cal. 327 (26 Pac. 830: 23 Am. St. Rep. 469) ; *Myers* v. *Dunn*, 49 Conn. 71; *Whitmore* v. *Bow-*

*man,* 4 G. Greene (Iowa) 148; *State* v. *Wallichs,* 12 Neb. 407 (11 N. W. 860).

2. In this case, taking into consideration the context, we are disposed to hold that the particular phrase under consideration should be interpreted to mean, "advertising and other things of like character." Now the city of Sumpter was never called upon to do any specific thing to make its bonds valid, or to satisfy the attorney that they were valid. It seems to have been assumed by him that it was impossible that validity could be imparted to them by any act which the city could perform. Hence, as they were not called upon or required to do any specific thing, they were not in default, unless the bond issue was, in fact, void, and to that question we will now devote our attention. At the outset it may be stated, as an elementary proposition, that municipal corporations have no powers except such as are granted in express words by their charters, or such as are necessarily implied from those so granted, or those essential to the declared objects and purposes of the corporation: 1 Dillon, Municipal Corporations, § 89; Tiedeman, Municipal Corporations, § 110; 1 Beach, Public Corporations, § 538; *MacDonald* v. *Lane,* 49 Or. 530 (90 Pac. 181).

3. With the foregoing definitions and limitations of municipal power in view, we will now examine the provisions of the city charter of Sumpter, in order to determine whether, among the powers granted or implied in its charter, or necessarily essential to the declared objects of its incorporation, there exists the power to construct a sewer system for the city, and to pay for it out of the general fund, or by bonding the city. Section 31 of the charter (Sp. Laws 1901, p. 101) authorizes the levy of a special tax of not to exceed 10 mills for any specific object within the authority of the corporation, in addition to a general tax of a like amount for general municipal purposes. Subdivision 5 of the same section authorizes the city to issue bonds "for any specific purpose,"

and further provides as follows: "Whenever the city of Sumpter shall contemplate the issuance of bonds for any improvement under this act, the council shall, by ordinance, direct the manner in which the estimate of the cost of such improvements shall be ascertained." Following this are provisions for making and filing the estimate, submitting the question to a vote of the taxpayers, and other matters not necessary to enumerate. In subdivision 17 of the same section is found authority, among other things, for the construction, cleaning, and repairing of streets, crosswalks, alleys, gutters, and sewers, and in subdivision 47 there is granted general authority "to exercise all such power as may be given to the council by this act, and such additional power and authority as may be necessary and proper to carry into effect the provisions of this act, and to pass all ordinances necessary therefor." From these provisions it will be seen that the power to construct sewers is specifically granted, and it will not be questioned that constructing a sewer is a "specific city purpose," so, if we proceeded no further, it would follow, as a natural consequence, that the city has authority to build a sewer system and pay for it with bonds, if the taxpayers sanction such action by their votes. But there are other provisions of the charter which it is contended are of controlling force, in reference to the construction of sewers, and which, by prescribing a method of improvement by assessment on abutting property, exclude by implication any other method.

4. Section 92 of the charter provides "that the council shall have power to * * improve a street, or any part thereof * * and to lay all necessary sewers or drains. The power and authority to improve a street includes the power and authority to order the whole, or any portion, either in length or width, of the streets * * of the city of Sumpter, to be graded, or regraded, planked or replanked, paved or repaved, macadamized or remacadam-

ized * * and to order sidewalks, gutters, sewers, man-
holes * * to be constructed, repaired, or kept in repair;
and to order any work to be done therein which may be
necessary to complete the whole or any portion of said
streets, avenues, lanes or alleys * * or for the construc-
tion of any sewer or drain therein. * * Provided, how-
ever, and it is hereby expressly enacted, that neither the
city of Sumpter, nor any officer thereof, shall be liable for
any portion of the cost or expense of any street work,
improvement, or the construction or repair of any sewer
or drain, by reason of the delinquency of the person,
persons, or property assessed for the payment of said
work * * or by reason of the inability of said city of
Sumpter to collect assessments levied for the payment of
such work, improvement, sewer or drain, as aforesaid,
and no moneys shall ever be paid out of the general fund
of the city on account of any such work * * but the
contractors doing such work shall look solely to the prop-
erty affected by such work and the owners thereof,
*unless at the time the improvement is ordered the council
shall expressly provide, by ordinance,* that some portion
thereof shall be paid out of the general fund." We
italicise the exception in the above section to call atten-
tion to the fact that, while it and several subsequent sec-
tions contain an elaborate system of street improvement
by assessment of abutting property, there is still an indi-
cation of a legislative intent to leave the city free to
improve by drawing on the general fund for that pur-
pose, if such a course should be deemed advisable.

Sections 128 to 137, inclusive, deal exclusively with the
subject of sewers and drains, and provide a method of
constructing them by assessment on property benefited.
The grant of authority already twice given in preceding
sections is reiterated in Section 128 in the following
language: "The council shall have the power to cause to
be constructed and laid down all sewers and drains, with
all necessary manholes, lampholes, catchbasins and

branches, and to repair or relay the same whenever it may deem that the public health, interest, or convenience may require the same, and to assess the cost thereof on the property benefited directly or indirectly by such sewer or drain, or the repair of the same in the manner hereinafter provided." Section 129: "Before the construction, laying, or relaying of any sewer or drain shall be authorized, *the cost of which is to be assessed to the property benefited,*" etc.—after which follows a complete system for constructing sewer by assessment. We again call attention to the italicised portion of the section last cited, which indicates that other methods than that of assessing benefited property may be employed. To sum up, in section 31 is found the power to levy a tax for any specific city purpose. In subdivision 5 of the same section is found the power to issue bonds for a like purpose, and in subdivision 17 is found unlimited authority to construct sewers. We have a case, then, where an unlimited authority is given, and we think the subsequent sections, providing for assessment upon property benefited, are only added out of abundant caution, so that if the city should choose to pursue the latter method, all the machinery would be provided to make it effective. We think the language used in the subsequent sections indicates that it was not the legislative intent to make the assessment method the exclusive one, and that the words "the cost of which is to be assessed on the property benefited" clearly indicate that the legislature intended to permit other methods to be used, and not an intent to limit an authority already expressly granted without limitation. This being the case, the plaintiffs were in default, and the council acted within its rights when it declared the $600 forfeited. The moneys, having been thus rightfully turned into the treasury, the council had no authority to order it repaid to the plaintiffs, as they could only appropriate money to pay some legitimate claim against the city.

5. Section 60 of the charter reads as follows: "All demands and accounts against the city shall be presented to the recorder, with the necessary evidence in support thereof, and he shall report them to the council at its next meeting after being so presented to him, together with any suggestions and explanations which he may deem proper and pertinent. All such demands and accounts shall lie over from the meeting at which they were presented until the next regular meeting, when the council shall vote direct whether the same shall be paid in whole or in part, as they may deem just and legal. Provided, the same be for corporate purposes and none other." Plaintiffs failed to comply with this section in several particulars: (1) The demand was not presented to the recorder; (2) no evidence in support thereof was presented, and in addition the claim was illegal, and the attempted appropriation was not for a corporate purpose, but was a mere gift. The above-cited provisions of the charter being in the interest of the general public, and a matter of positive law, it is difficult to see how the council could waive it; neither could they waive the fact that the claim was one they had no right to pay in any event, and their action in ordering it paid was a violation of the charter and void: *Richardson* v. *Salem,* 51 Or. 125 (94 Pac. 34), and cases there cited. We do not think that the mayor of Sumpter is a mere ministerial officer and an automaton of the council. Section 48 of the charter is as follows: "The mayor is the chief executive of the municipal corporation and must exercise a careful supervision over its general affairs and subordinate officers"—and we think that when, in the course of general supervision, he found that the council had illegally ordered a warrant drawn, it was his duty to refuse to give it a currency which might mislead possible innocent purchasers into the belief that it was for the payment of a legitimate claim: *Richardson* v. *Salem,* supra; *Chalk* v. *Mayor of White,* 4 Wash. 156 (29 Pac. 979); *James* v.

*Seattle,* 22 Wash. 654 (62 Pac. 84: 79 Am. St. Rep. 957).

6. We find no error in the findings of fact made by the court below. It is urged that the court erred in failing to find on certain material issues in the writ, and we will briefly consider these assignments: Assignment No. 16 is as follows: "The court erred in refusing to find the following allegation of the writ to be true: 'That on or about the 21st day of June, 1904, plaintiffs herein entered into a written contract or agreement with the city of Sumpter, by its mayor and recorder, by order of its council for the building of a sewer system in the city of Sumpter.' That said contract, among other things, provided that plaintiffs should take in payment for the construction of said sewer, legally issued bonds of the city of Sumpter, the city reserving the right to pay for such work in cash instead of in bonds, and said contract further provided, in effect, that said city should do everything that might be demanded by plaintiffs to satisfy the attorney of plaintiffs that said bonds were legally issued; the question of the legality of said bonds being left by said contract for determination to the attorney for plaintiffs. And the court erred in refusing to make any finding as to the issue raised by said allegation." The court did not find directly and in terms upon this issue, but made the contract itself a part of its findings, so that it found in the very terms of the contract just what the parties did agree to in this respect. A further and more specific finding would have been only a conclusion of law from the facts found, and we think the finding sufficient.

7. Assignment No. 17 relates to the refusal of the court to find upon certain provisions of the charter of the city of Sumpter. The charter is a public law of this state of which all courts take judicial notice, and it was not necessary for the court to make a finding upon it.

8. Assignment No. 18 relates to the refusal of the court to find that the city had failed to comply with the contract on account of its bonds being illegal and worthless.

The contract, as we have said before, is made a part of the court's finding, and whether the city had failed to comply with it depended upon the construction of the contract taken in conjunction with the city charter, and arises as a legal conclusion from the facts contained in the findings and the construction of a public statute. In the absence of a request for a more specific finding we think the matter sufficiently covered to support the judgment.

Assignment No. 19 relates to the refusal or failure of the court to find that plaintiff demanded the return of the $600, and proposed that, if it would do so, he would release it from further liability on the contract. There was only one legal way for plaintiffs to demand their money, and that was by presenting their demand, with the proper evidence thereof, to the recorder, which is not alleged. The allegation as it stands is not material.

Assignment No. 20 relates to the refusal of the court to find the following allegation of the writ to be true: "That by the adoption of such report and recommendation the city of Sumpter entered into a contract with plaintiffs for the return of said sum of $600 upon plaintiffs signing the release mentioned in said report and recommendation, and in said proposal of said plaintiffs," and in refusing to find upon said allegation. The allegation was, in its essence, a mere statement of a conclusion of law, namely, that by a certain action of the city council, and the signing of a certain paper by plaintiffs, a contract arose by operation of law. The allegation was not material, and no error was committed by the court in refusing to find upon it. The same may be said of the next assignment.

If there had been no finding on any of the matters embraced in the assignments of error just mentioned, we still think that, in the absence of specific requests for such findings, the failure to find would not be reversible error. The court found on issues that ultimately de-

termined and necessarily supported the judgment rendered, and the other issues in the case, therefore, become immaterial: *Lewis* v. *First National Bank,* 46 Or. 182 (78 Pac. 990) ; *Freeman* v. *Trummer,* 50 Or. 287 (91 Pac. 1077).

From the conclusions here reached, it follows that the judgment of the court below must be affirmed.

                                                    AFFIRMED.