Argued July 7, demurrer to answer to alternative writ overruled
July 30, 1921, demurrer to answer to amended alternative writ
overruled June 27, dismissed September 26, 1922.

## STATE EX REL. *v.* FUNK.

(199 Pac. 592; 209 Pac. 113.)

**Mandamus—Auditor's Answer to Mandamus Held to State Fact Showing Ordinances for Payment to Contractor Were Void.**

1. In *mandamus* proceedings to compel the auditor to issue warrants to a public contractor as authorized by ordinances for the payment of extra compensation for the completion of the building, an answer, denying the allegations that the city arbitrarily changed the plans and specifications so as to increase the cost, and alleging facts showing that the increased cost was due to the contractor's fault, is sufficient to state a defense, since the council could not authorize the payment of public moneys if the increased cost was the contractor's fault.

**Municipal Corporations—Changes in Specifications for City Building may Impose Legal Liability to Pay Extra Cost.**

2. Changes made by the city in the plans and specifications for a public building during the course of its construction, whereby the cost of constructing it is increased without the fault of the contractor, impose a legal obligation on the city for such increased cost which the city council can pay from public funds.

**Municipal Corporations—Changes in Plans and Specifications not Imposing Legal Obligation to Pay Increased Cost may Impose Moral Obligation Which may be Paid.**

3. Changes in the plans and specifications of a public building, whereby the cost of construction was increased which did not impose a legal obligation on the city to pay such increased cost, may nevertheless impose a moral obligation which the legislative body of the city can, in its discretion, pay.

**Municipal Corporations—Offer of City to Reimburse Contractor for Losses Held not Binding.**

4. Offer of city to reimburse a contractor for losses on condition that the contractor commenced legal proceedings and obtain a judicial determination, that the city council had authority to pay a moral obligation did not become a binding contract by reason of the passage of ordinances making an appropriation and the placing of a release in escrow by the contractor, where no judicial determination had been obtained as to the authority of the council to pay a moral obligation.

**Accord and Satisfaction—Accord not Followed by Satisfaction Revocable at Will.**

5. An accord is not a bar to an action on the original liability unless it has been followed by satisfaction, being revocable at will by either party.

**Accord and Satisfaction—Promise may be Accepted as Full Satisfaction of Original Obligation.**

6. Where the agreement is that the promise, and not the performance of the promise, is accepted as full satisfaction and extinction of the original obligation, there is an accord and satisfaction, and the promisee has a right of action against the promisor for his failure to perform.

**Compromise and Settlement—Good Faith and Fairness Necessary.**

7. The very basis for the enforcement of a contract, compromising a disputed claim, is that the parties should have acted in good faith, and that the transaction should be fair.

**Accord and Satisfaction—Compromise and Settlement—Minds of Parties must Meet.**

8. In all contracts, whether of accord and satisfaction or the compromise and settlement of a disputed claim or otherwise, it is essential to the validity of the contract that the minds of the parties have met in agreement with each other.

**Action—Courts will not Pass upon Abstract Propositions.**

9. Courts pass upon concrete cases, and not abstract propositions of law.

**Stipulations—Courts Pass upon Facts, and cannot be Limited by Stipulations.**

10. Courts pass upon facts appearing before them, and their jurisdiction cannot be limited by the stipulation of parties, so as to deprive the court of its power to pronounce judgment upon all of the material facts in the case; nor can a stipulation of the parties or counsel enlarge the power or affect the duty of the court.

**Municipal Corporations—City not Bound by Contracts in Absence of Compliance With Charter.**

11. Compliance with a provision of a charter providing that the city shall not be bound by any contract unless authorized by ordinances, and made in writing, and signed by certain persons, must be had before liability will attach against the city.

Constitutional Law—City cannot Destroy Vested Right by Repealing Ordinance.

12. A city cannot destroy vested rights created by an ordinance by repealing it.

Mandamus—Not Issued Where Adequate Remedy at Law.

13. *Mandamus* will not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law.

Municipal Corporations—City Council may Repeal Ordinance Allowing Claim.

14. There is no reason which would prevent the city council, after the passage of an ordinance which allows a claim and directs its payment, from repealing such ordinance at any time before the payment has been made.

Municipal Corporations—Duty of Auditor to Satisfy Himself That Money is Legally Due Before Drawing Warrant.

15. Under its charter, it is the duty of the auditor of the City of Portland before paying any demand against the city to satisfy himself that the money is legally due and its payment is authorized by law, and until so satisfied he has no authority to draw a warrant, even though the city council has ordered a warrant drawn.

Municipal Corporations—City Charter is a Grant, not Limitation of Power.

16. The municipal charter of the City of Portland is a grant, and not a limitation of power.

Contracts—Moral Obligation is not a Sufficient Consideration in Support of an Executory Express Promise.

17. A moral obligation is not a sufficient consideration to support an executory express promise unless there has been an antecedent legal liability, which has become suspended or barred by operation of some positive rule of law, which extinguished the remedy, but not the debt, or where the promisee has suffered some detriment in reliance upon the promise, or where the promisor has received an actual pecuniary or material benefit for which he subsequently expressly promised to pay.

Municipal Corporations—City of Portland has No Authority to Pay Out Money Except upon Legal Obligations.

18. The council of the City of Portland, under its charter provisions, has no power or authority to pay out the public moneys of the city in payment of any obligations except the legal obligations of the city.

Mandamus—Issued Only Where Duty is Legally Defined.

19. *Mandamus* is an extraordinary remedy, and is not a writ of right, and is issued only where the duty sought to be enforced is one legally defined.

---

17. Moral obligation as a consideration for an executory contract, see note in 17 A. L. R. 1299.

Original proceedings in *mandamus*.

DEMURRER OVERRULED.

For plaintiff there were oral arguments by *Mr. Jay Bowerman* and *Mr. M. E. Crumpacker.*

For defendant there were oral arguments by *Mr. Frank S. Grant,* City Attorney, and *Mr. L. E. Latourette.*

HARRIS, J.—This is an original special proceeding brought by the State of Oregon upon the relation of J. C. Bayer, trustee, against George R. Funk, as auditor of the City of Portland, to compel the defendant by force of a writ of *mandamus* to issue to the relator a city warrant for $36,702.84 pursuant to two ordinances of the city council authorizing the issuance of the warrant.

Acting upon the petition of the relator an alternative writ of *mandamus* was issued commanding the defendant to execute and deliver to the relator a warrant for $36,702.84 or to show cause for not doing so. The defendant responded to the writ by filing an answer containing denials, admissions and affirmative allegations. The relator demurred to the answer for the reason that the "answer does not state facts sufficient to constitute a legal defense or answer to the alternative writ herein." The only question necessary to be decided now is whether or not the answer is sufficient to constitute a defense. It may be stated at the very outset that, because of the denials appearing in the answer, the demurrer must be overruled unless it can be said that the affirmative allegations made in the answer, notwithstanding the presence of the accompanying denials, admit facts sufficient to validate the ordinances.

The City of Portland concluded to erect a Public Auditorium and called for bids for the erection of the building. The city accepted the bid of Hans Pederson, and on March 22, 1916, the city and Pederson entered into a contract for the construction of the auditorium. Pederson gave a bond for the faithful performance of his contract with J. F. Kelly, N. A. Schanen and H. P. Scheel as bondsmen. Pederson entered upon the performance of the contract and continued with the work until some time, not definitely shown by the pleadings, when he became financially embarrassed, and J. C. Bayer was made a trustee. Although the parties do not agree in the pleadings upon the nature of Bayer's trust and although it does not definitely appear from the pleadings whether the responsibility of completing the building was taken over by the city or by Bayer as trustee, it does, appear that from the time of the appointment of Bayer as trustee the responsibility of completing the building was practically or wholly surrendered by Pederson and assumed either by Bayer as trustee or by the city; and, as we understand the pleadings, all payments made by the city subsequent to the appointment of Bayer as trustee were made to him.

Upon the completion of the building it was found, after balancing the accounts, that the structure had cost considerably more than the contract price. As we understand the record some of the companies, persons and firms who furnished labor and materials for the Public Auditorium have not yet been paid; and we infer, too, that Pederson is unable to pay the indebtedness and that Kelly and Schanen, two of the bondsmen, have turned over to the trustee, certain property for the benefit of the unpaid creditors.

It appears from the pleadings that a claim was made to the effect that because of certain alleged circumstances the city ought to satisfy the unpaid indebtedness and save the bondsmen from loss; and as a result of this claim so made the city council appointed a committee of five representative citizens to investigate the facts and report whether or not the city was under any obligation to pay more than the contract price of the building. This committee, after investigation, reported that in its opinion the city was justly obligated to pay such sum as would compensate for the increased cost of the building. Subsequently, on April 14, 1920, the council appointed a second committee consisting of three representative citizens to make an investigation into the facts and circumstances concerning the construction of the building and the causes if any of the increased cost and to report to the council with recommendations. This committee made an investigation of the claims of the contractor for the increased cost of the building and reported to the council that in view of all the facts and circumstances the city was obligated to pay an additional sum of $65,493.82 for the increased cost of the building.

On March 23, 1921, after the report of the second committee, the council passed an ordinance entitled:

"An ordinance providing for settling the claims connected with the contract of Hans Pederson for the construction of the Public Auditorium."

This ordinance in effect states that it appears to the council that the claims of Hans Pederson and of J. C. Bayer trustee, growing out of the contract for the erection of the Public Auditorium

"present a condition, where a moral obligation exists on the part of the City of Portland in the sum of $36,702.84, which should be paid";

provided, that a release, which had been signed and was then in escrow be delivered to the city upon the making of payment.

Pederson and Bayer, as trustee, had executed a release in which it is recited that—

"in consideration of the sum of $36,702.84 to be paid by the city * * concurrently with the delivery of this instrument for the compromise and settlement of any and all rights, claims and/or demands either legal, moral, equitable or otherwise, * * said Hans Pederson and said J. C. Bayer trustee, do hereby acknowledge full and complete accord, satisfaction and discharge of any and all such rights, claims and/or demands."

The release was placed in escrow with parties who were satisfactory to both Pederson and Bayer with instructions to surrender the release to the city upon delivery of the warrant. A second ordinance was passed appropriating $36,702.84 out of the general fund for the purpose of paying the warrant authorized by the first ordinance.

Formal demand was made upon the defendant as city auditor to issue the warrant, but he refused and subsequently this proceeding was begun. The relator contends that the city ordinances providing for the issuance of the warrant and the appropriation of moneys for its payment are valid; and consequently he has caused to be set forth in the writ allegations of the facts upon which he relies to support his contention. The defendant insists that the ordinances are void, because, he says, the council exceeded the authority conferred upon it by the charter.

The alternative writ opens with an allegation that Bayer is the trustee for certain unpaid creditors of J. F. Kelly and N. A. Schanen, two of the bondsmen; but this averment is denied by the defendant and is supplemented by affirmative allegations in explanation of the denial. It is then alleged in the writ in general terms that the contract for the construction of the Public Auditorium as originally made was substantially abandoned by reason of certain arbitrary changes and modifications imposed by the city in the terms of the contract and the specifications for the construction of the building; and that after such alleged abandonment the unpaid creditors assisted in and were responsible for the completion of the building. The defendant denies that the unpaid creditors assisted in or were responsible for the construction of the building; and the defendant also denies that the contract was abandoned or that arbitrary or other changes were imposed by the city in the terms of the contract or specifications; and the defendant supplements these denials by alleging affirmatively that prior to the completion of the building Hans Pederson became financially embarrassed and that thereupon several meetings were held between Pederson, his bondsmen, and certain subcontractors and materialmen who had furnished labor and material and had agreed to furnish further labor and material for the purpose of completing the contract, and as a result of these meetings Bayer was selected as trustee to handle and disburse upon certain terms and conditions, the progress and final payments subsequently to be made by the city upon the Pederson contract.

For a second time it is alleged in general terms in the writ that after having been awarded the contract for the construction of the Public Auditorium, Hans

Pederson entered upon the performance of his contract, and that the work of construction proceeded under the contract and specifications until a certain time when by reason of certain and numerous arbitrary changes and modifications in the contract and specifications, which were imposed upon the contractor by the city, the contract was substantially abandoned and the completion of the building was undertaken by the trustee. But the whole of this general allegation is denied by the defendant.

The writ continues by particularizing the alleged arbitrary changes and modifications which the relator asserts produced a substantial abandonment of the original contract. The relator specifies three material changes. The first alleged change relates to brick. On May 25, 1916, Pederson entered into a contract, with the approval of the city, for the purchase of what is known as Newberg brick. On October 4, 1916, Pederson was directed by the city to cancel his contract for the Newberg brick, for the reason that the makers of the Newberg brick had not furnished brick "matching those formerly on the job," and the city was not able to get a proper guaranty from the makers that they would supply brick of the proper kind. On October 21, 1916, the city notified Pederson that it had authorized the use of what is known as Hebron brick, and, accordingly, Pederson ordered Hebron brick. The first delivery of Hebron brick was not made until November 28, 1916, and the relator alleges that by reason of the change of brick a delay of approximately sixty-five days during the months of October and November resulted and that because of this delay the work was thrown over into the winter months at which time the weather was more inclement and the workmen were

handicapped by the bad weather and the work of construction was materially retarded, all of which caused a considerable increase in the ultimate cost of the building.   The relator also says that the alleged delay and the increased cost resulted from arbitrary changes imposed by the city.   Although the defendant admits that there was a delay in obtaining brick, he denies that the delay was caused by arbitrary changes in the contract and specifications imposed by the city; and furthermore the defendant alleges that the delay was the result of the negligent failure of the contractor to place an order for the brick at an earlier date; that the delayed delivery of the proper brick did not delay other portions of the work; and that the city was justified and had a right to change from Newberg to Hebron brick.

The second alleged change relates to the stone used in the building.   In substance the relator avers that he entered into a contract with the Hercules Sand Stone Company of Tenino, Washington, for the delivery of stone, quarry cut; and that at that time many men in Portland were out of employment and in order to relieve that condition the city directed Pederson to make a contract with Malone & Sandstrom, residents of Portland, for the furnishing and cutting of the stone.   The relator says that because Malone & Sandstrom were financially irresponsible, Pederson was required to meet their pay-rolls at the very outset, thus injuring the financial standing and credit of the contractor; and the relator further alleges that—

"by reason of this arbitrary imposition * * the building of the auditorium was delayed to a considerable extent, and the cost in the furnishing and cutting of said stone materially increased."

Besides denials of the obligations which impute fault to the city, the defendant alleges facts which, if true, justify the city in doing all that it did; for among others, we find an allegation that the city refused to approve the contract for the Tenino stone because it "was not of the kind called for by the specifications which formed a part of said building contract."

The other alleged change relates to progress payments. The contract provided for monthly estimates of the progress made on the work during each month. The writ alleges that the contract required the city to pay ninety per cent of the monthly progress and permitted the city to withhold only ten per cent. The relator says that the city retained 18 per cent, with the result that Pederson was seriously handicapped. The city meets this contention by alleging that under the contract with Pederson it has a right to retain every dollar that was retained. The contract is not set out in the pleadings and consequently we cannot now construe it.

1. In effect the relator alleges that the increased cost of the building over and above the contract price was caused by the fault of the city in imposing arbitrary changes in the three main particulars mentioned. Although the defendant admits that there was delay and that the building cost more than the contract price, he denies that the city was at fault; and he affirmatively alleges that the increased cost was due to Pederson's own fault and negligence. If the facts stated in the answer are true, then the situation is one where a contractor by reason of his own fault and negligence has lost money on his contract and the city is attempting to use tax moneys to relieve him from losses for which the city is in nowise to blame. If, on the other hand, the allegations found

in the writ are true, then the city was at fault.  If the city was at fault and that fault created a legal liability, then undoubtedly the ordinances are valid; and if the ordinances are valid the auditor must issue a warrant.  In view of the denials and affirmative allegations contained in the answer we cannot possibly know the facts until witnesses are heard.

2. If the city made changes, then those changes may have been made under such circumstances as to have created: (1) A legal liability on the part of the city enforceable in a court; or (2) possibly a mere moral obligation; or (3) no obligation whatever.

3. If the facts created a mere moral obligation, then that obligation may, on the one hand, be one which the legislative body of the city can in the exercise of its judgment pay; or, on the other hand, it may be such an one as the council cannot lawfully pay with moneys collected from taxpayers.  When arguing the demurrer to the answer, much of the argument in behalf of the relator was made on the assumption that the allegations in the writ are true.  But as we have seen, the allegations upon which the relator relies to support his contention that the city was at fault are denied by the defendant.  The demurrer is to the answer as a whole.  The answer states a defense; and hence the demurrer is overruled.

The relator is allowed ten days within which to file a reply.  Upon the filing of a reply a referee will be appointed to take and report the evidence.

DEMURRER OVERRULED.

105 Or.—10

Demurrer overruled June 27, 1922.

ON DEMURRER TO ANSWER TO AMENDED ALTERNATIVE
WRIT.

(209 Pac. 113.)

OVERRULED.

For the plaintiff there was a brief over the names
of *Mr. John M. Pipes* and *Mr. George A. Pipes,* with
an oral argument by *Mr. Martin L. Pipes.*

For defendant there was a brief and oral argument
by *Mr. Frank S. Grant* and *Mr. L. E. Latourette.*

In Banc.

RAND, J.—As heretofore stated in *State ex rel.
Bayer* v. *Funk, City Auditor, ante,* p. 134 (199 Pac.
592), these proceedings were brought on the relation of
J. C. Bayer, trustee, against the defendant as auditor
of the City of Portland, to compel defendant, as audi-
tor, to issue to the relator a warrant for $36,702.84.

This controversy grows out of a contract for the con-
struction of the Auditorium building in the City of
Portland, entered into by the city with Hans Pederson
on March 22, 1916. Pederson, after commencing the
construction of the building, becoming involved, on
May 3, 1917, joined with his creditors and the sure-
ties upon his bond to the city, in entering into a con-
tract with J. C. Bayer, the relator, as trustee, wherein,
with the consent of the city, it was agreed that the
relator, as trustee for Pederson and for his bondsmen
and creditors, should carry out Pederson's contract
with the city, and should receive and disburse all
moneys to be paid by the city upon the Pederson
contract.

It now appears that the contract between Pederson and the city has been completely performed by Pederson and the relator on the one side, and by the city on the other; that the city took no part in the construction of the building, other than to completely perform the contract on its part; that the city has paid all sums it contracted to pay; that in addition thereto it has already paid to the relator, as trustee, the sum of $21,525, which sum was paid to reimburse Pederson for an error which he claimed to have made in computing the bid upon which he was awarded the contract; that the city has also allowed and paid, over and above the contract price; $11 per thousand for the brick entering into the construction of the building; and that other considerations of value, which the city was not required to make, were made by the city in favor of relator and Pederson. It also appears that a final settlement was made by the city with Pederson and the relator, and that a final receipt was given, and that a full and complete release to the city was executed and delivered by the relator and by Pederson discharging the city from all liability to the relator or to Pederson upon, or in connection with, said contract.

In our former opinion we overruled a demurrer to the answer to the first alternative writ of *mandamus,* and allowed the defendant ten days in which to file a reply. Subsequent to the filing of the reply upon the petition of the relator, an amended alternative writ was issued. To this amended alternative writ the defendant answered, and to this answer the relator has demurred, upon the ground that the facts stated in the answer do not constitute any defense to the writ, or show any fact why the peremptory writ should not issue. The demurrer attempts to segregate the new

matter alleged in the answer into separate parts, and to demur to each. We shall treat the demurrer as going to the entire answer.

The facts alleged in the present writ are substantially the same as those alleged in the former writ. The brief filed on behalf of the relator states, "The only difference between the original writ and the amended writ is that the amended writ alleges the claims more particularly than the former writ, and that it has omitted the allegations of the dereliction of the city and substituted therefor that the contractor and the relator claimed those facts to be true, and that that claim was settled by a compromise."

Upon the former appeal, the relator's brief stated his contention at that time to be as follows: "As we view it, there is only one question involved in this controversy, and that is, whether or not, under charter powers of the City of Portland, the council has the authority to pay moral obligations existing against the city."

The present writ in substance alleges that relator had an unliquidated, disputed claim against the City of Portland for an amount in excess of $36,702.84, which the city was under a legal obligation to pay; that the city offered to pay said sum as a compromise of said claim upon condition that the relator should execute a release, discharging the city from all obligations, legal, moral or equitable, in favor of the relator and Pederson, and should place the same in the hands of a third party, to be delivered to the city when a warrant for said sum in favor of the relator was issued in payment thereof; that the city accepted said offer and performed on its part by the passage of two ordinances, one of which authorized the payment of said sum to the relator, and the other appro-

priated the money for such payment; that the relator executed the release and delivered the same in escrow, and directed that it should be delivered to the city when a warrant was drawn for the payment of the money.

Because the answer admits that the two ordinances were passed and a release was executed and delivered to an escrow-holder, the relator contends that the transaction in effect created a legal obligation upon the city to pay to the relator the sum of $36,702.84. In support of this contention relator's present brief says, (1) "That it was the payment of a part of an unliquidated, disputed claim and a receipt or release in full of the balance"; (2) "that it was a compromise, accord and satisfaction"; and that (3) "the ordinances and the release constitute a contract, and this contract recites that it was a compromise, accord and satisfaction, and the contract being admitted in its very terms, the defendant cannot say that the transaction was otherwise than as recited."

The contention that the transaction amounted to the payment of an unliquidated and disputed claim and a release or receipt in full for the balance cannot be sustained, because it appears very clearly from the allegations, both of the writ and of the answer, that the payment has not been made, nor has the release above referred to been delivered to or accepted by the city. It is alleged in the writ, and denied by the answer, that the relator had an unliquidated or disputed legal claim, or any *bona fide* claim against the city, or that he ever honestly believed that any sum of money was justly due or owing to him from the city. Thus the very question of whether or not the relator had, or in good faith believed that he had, such a claim as could, by the settlement thereof, constitute

a consideration for a valid contract of compromise, is put in issue and is a matter in dispute under the pleadings.

From the allegations of the answer, which, for the purposes of the demurrer are admitted to be true, it appears that the city has completely performed its contract, and that it has paid to Pederson and to the relator all and more than it contracted to pay; that a final receipt has been given therefor; that a full and complete adjustment and settlement has been had with Pederson and with the relator, and that Pederson and the relator have executed and delivered to the city a full and complete release, discharging the city from all claims and demands arising from or connected with Pederson's contract. It also appears from the allegations of the answer that the relator and Pederson, as well as Pederson's bondsmen and creditors, claimed to the city council that Pederson had lost large sums of money in fulfilling his contract, and urged the city to reimburse him in full or in part for the losses he had so sustained; that the city council were of the opinion that the city was under a moral, but not under any legal, obligation to pay a part of such losses; that the city council offered to pay to the relator the sum of $36,702.84 as a moral, but not as a legal, obligation on condition that the relator should commence legal proceedings to obtain, and should obtain, a judicial determination that the city council had authority to pay said sum of money to the relator as a moral obligation, and not as one which was enforceable in an action at law.

It also appears from the new matter alleged in the answer that when the ordinances were passed and the release was executed and delivered in escrow, it was stipulated between the relator and the city council

that the relator should not be paid, nor should the rights of the city be in any manner prejudiced, or be in any way affected by the passage of the two ordinances above referred to, unless in proceedings to be brought by the relator it should be judicially determined that the council had lawful authority to pay a purely moral obligation.

4. If the facts are as alleged in the answer, the city was under no legal, equitable or moral obligation to reimburse the relator or Pederson, or the creditors and bondsmen of Pederson in any sum or amount whatever. As disclosed by the answer, the offer was not an absolute one, but was conditional upon the happening of an event, and the condition upon which the offer was to depend has not been fulfilled. Therefore, as the condition upon which the offer was made had not been complied with, the city did not become obligated to any extent, nor did any right become vested in Pederson or the relator by reason of the passage of the ordinances and the execution and delivery in escrow of the release.

By the terms of the stipulation under which the council passed the two ordinances, and the relator and Pederson executed their joint release and placed the same in escrow, this transaction did not amount to an accord and satisfaction, nor did it result in any binding contract between the parties.

"An accord is an agreement between two parties to give and accept something in satisfaction of a right of action which one has against the other, which when performed is a bar to all actions upon this account" (Bouvier's Law Dict., p. 62); while "An accord and satisfaction is a method of discharging a contract, or settling a cause of action arising either from a contract or a tort, by substituting for such contract or

cause of action an agreement for the satisfaction thereof and an execution of such substituted agreement." 1 R. C. L., bottom paging 177.

5, 6. An accord is not a bar to an action on the original liability unless it has been followed by satisfaction. The original liability is not discharged by an executory accord, and as long as the accord is executory it is revocable at will by either party, and neither party can maintain an action against the other thereon. After a valid accord and satisfaction the original liability is discharged. To amount to a bar, the accord must be fully performed. If, however, the agreement is that the promise, and not the performance of the promise, is accepted as full satisfaction and extinction of the original obligation, then, in such a case, it amounts to an accord and satisfaction. In other words, if the agreement between the parties is that the original liability is to be discharged and that the new promise is to be accepted as a substitute in satisfaction of the original liability, the original liability will be discharged and the promisor's subsequent failure to carry out the agreement will not revive it. Where the new promise has been accepted as an extinction and satisfaction of the original liability and the new promise has not been performed, the promisee has a right of action against the promisor for his failure to perform: *Tuttle* v. *Metz Co.,* 229 Mass. 272 (118 N. E. 291); *Frankfurt-Barnett Co.* v. *Prym Co.,* 237 Fed. 21 (L. R. A. 1918A, 602, 150 C. C. A. 223); *Kinney* v. *Brotherhood of American Yeoman,* 15 N. D. 21 (106 N. W. 44); 1 C. J., § 23, p. 533; 4 Page on Contracts, §§ 2515, 2516.

"Generally, but not universally, if the new promise be founded upon a new consideration, and is clearly binding on the original promisor, this is a satisfaction

of the former claim; and otherwise it is no satisfaction.'' 2 Parsons on Contracts, § 683.

From the allegations of the answer, as well as from the writ itself, it clearly appears that the transactions which took place between the relator and the city council did not amount to an accord and satisfaction, and if the conditional promise of the city could be held to constitute an accord, under the authorities it was revocable by the city at any time before it was executed.

7. We are unable to agree with the contention that the answer admits or fails to allege any fact necessary to make a good and complete defense to the matters and things alleged in the writ. If the allegations of the answer are true, then no valid settlement of a disputed claim between the relator and the City of Portland has ever been made, nor has the city ever undertaken to pay the relator any amount of money whatever, except conditionally, and the condition upon which the payment was to be made has not been fulfilled. From the allegations of the answer it appears that at the time the ordinances were passed by the city council, the relator conceded that he had no enforceable claim or demand against the city, but that as losses had been sustained in the performance of the Pederson contract, the city ought, on moral considerations alone, to partially reimburse Pederson and his creditors for a part of such losses, and that the council was willing to do so, if it had lawful authority to assume and pay a moral obligation; that it was at that time stipulated and agreed between the relator and the city council that if the council would pass the two ordinances in question, he would execute a full release to the city and place the same in escrow; and that the city auditor should thereupon re-

fuse to issue a warrant in payment thereof; and that, unless in these proceedings it should be judicially determined that the council had lawful authority to pay an obligation which was moral in its nature, and was not a legal obligation, then the relator was to receive no sum of money whatever. These facts, if true—and for the purposes of the demurrer they are admitted to be true—constitute a full and complete defense to the relator's contention that by the passage of the ordinances and by the execution of the release, a valid, enforceable contract was created. The very basis for the enforcement of a contract, compromising a disputed claim, is that the parties should have acted in good faith and that the transaction should be fair. To permit the relator now to take advantage of the acts done by the city in reliance upon his promises, without requiring a performance upon his part, would result in perpetrating a gross fraud upon the city.

8. In all contracts, whether of accord and satisfaction or the compromise and settlement of a disputed claim, or otherwise, it is essential to the validity of the contract that the minds of the parties have met in agreement with each other. There must be an *aggregatio mentium,* as otherwise the contract is not complete. The promise on the part of the city as disclosed by the answer was not an absolute one to pay the relator, but was one to pay upon the fulfillment of a condition. The relator now contends that the promise should be treated as an absolute, and not a conditional one. This would violate the above rule and would result in making a contract for the parties entirely different from the one which they made for themselves.

The condition upon which the promise was based has not yet been fulfilled, and until the event upon

which the promise was conditioned happens, the contract is unenforceable. Under the understanding and agreement, if, as set forth in the answer, the rights of the relator to the money have not yet become vested, and until the condition upon which the promise was made has been fulfilled, the city auditor is without lawful authority to issue the warrant, and his issuance of a warrant would be a violation of his official duty. The answer therefore states a good and complete defense to relator's contention that he is entitled to the issuance of a peremptory writ.

9. Without commenting upon the fact that courts pass upon concrete cases and not abstract propositions of law, and ought not to depart from the universal rule that the duties and powers of courts are limited to the determination of rights actually controverted in the particular case before them, and that this court is not the legal adviser of the City of Portland or of the relator, or upon the futility of an arrangement whereby the city council promised to pay to the relator a sum of money on the condition that it should be first judicially determined that, under the charter provisions of the City of Portland, the council had authority to pay a moral obligation, it is only necessary to say that this court will not assume jurisdiction to compel the city auditor of the City of Portland to issue a warrant until the condition on which the promise was made has been fulfilled.

10. In this connection it is suggested that because the stipulation recited in the answer attempts to limit the jurisdiction of this court to the determination of the sole question of whether the city has authority to pay out the public money in settlement of a purely moral obligation, it is not binding, for the reason that courts pass upon the facts appearing before them,

and that the jurisdiction of the court cannot be limited by the stipulation of parties so as to deprive the court of its power to pronounce judgment upon all of the material facts in the case; and that no stipulation of parties or counsel can enlarge the power or affect the duty of the court in this regard: *Swift & Co.* v. *Hocking Valley R. Co.*, 243 U. S. 281 (61 L. Ed. 722, 37 Sup. Ct. Rep. 287). We agree to the soundness of the legal principle contended for. If the stipulation had the effect of preventing the court from passing upon the facts actually appearing before it, or of depriving the court of the power to pronounce judgment upon all the material facts in the case, then we would disregard such stipulation in so far as it had that effect. But the stipulation in question was not intended to have that effect. It was intended to limit and qualify the agreement of the parties. To the extent that it does so limit and qualify the agreement of the parties, it is our duty to give to the stipulation the effect which the parties intended it to have.

The answer also alleges that Section 148 of the charter of the City of Portland provides that: "The City of Portland shall not be bound by any contract nor in any way liable thereon unless the same is authorized by an ordinance and made in writing and signed by some person or persons duly authorized thereunto by the Council. But an ordinance may authorize any board, body, officer or agent to bind the city without a contract in writing for the payment of any sum not exceeding two hundred fifty dollars ($250)."

11. The relator is attempting to enforce against the City of Portland an alleged executory contract, without alleging that this provision of the charter has been complied with. In this state the law is settled

by an unbroken line of decisions that a compliance with the provisions of a charter such as this must be had before liability will attach against the city, or the city be bound by any contract not made in compliance with the provisions of the charter: *Philomath* v. *Ingle,* 41 Or. 289, 292 (68 Pac. 803); *Beers* v. *Dalles City,* 16 Or. 334, 336 (18 Pac. 835); *Ward* v. *Town of Forest Grove,* 20 Or. 355, 358 (25 Pac. 1020); *Richardson* v. *City of Salem,* 51 Or. 125, 127, 128 (94 Pac. 34); *MacDonald* v. *Lane,* 49 Or. 530 (90 Pac. 181); *Bridges* v. *Multnomah Co.,* 92 Or. 214, 222 (180 Pac. 505).

12. The answer alleges that on December 14, 1921, the council of the City of Portland passed an ordinance repealing the two ordinances above referred to. This repealing ordinance recited the circumstances under which the two ordinances were passed and the conditions upon which their operation was to depend. The passage of this repealing ordinance was subsequent to the commencement of these proceedings. If, at the time the repealing ordinance was passed, the relator had acquired a vested right to have a warrant issued for the payment of said sum of money, the repealing ordinance might not be available to the defendant as a defense in these proceedings, since the city council would be without authority to destroy such vested right without the consent of the relator. But if the condition upon which the operation of the repealed ordinances depended was as alleged in the answer, the relator never acquired a vested right to the money, and the city council therefore had authority to repeal the two ordinances, leaving to the relator his remedy in an action at law.

13, 14. By the passage of the repealing ordinance, the authority of the auditor to draw the warrant was

withdrawn, and if the relator had a legal claim against the city, he had a right to enforce the payment thereof by an action at law. Our statute expressly directs that the writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law. But we can see no reason, and none has been suggested, which would prevent the city council, after the passage of an ordinance which allows a claim and directs its payment, from repealing such ordinance at any time before the payment had been made. It would seem that such power must necessarily be inherent in the city council in order to prevent, in any proper case, an imposition upon the city through fraud, accident or mistake.

15. Under its charter, the auditor of the City of Portland is the "accounting and clerical officer of the city." He "shall approve no demand unless the same has been allowed by the officer, board, department, or committee required to act thereon": Section 276. "Every demand upon the treasurer except the salary of the auditor must before it can be paid be presented to the auditor, who shall satisfy himself whether the money is legally due, and its payment authorized by law": Section 278. "When liability for any claim presented is not sufficiently apparent to him, he may delay the payment thereof until such liability shall be determined": Section 279. "When any demand has been duly approved and audited, the Mayor and auditor shall draw warrants on the treasurer therefor": Section 280.

By these provisions, it is the duty of the auditor, before paying any demand against the city, to satisfy himself that the money is legally due and that its payment is authorized by law. Until satisfied that the demand is legally due and is authorized by law,

the auditor has no authority to draw a warrant in payment of any claim or demand. The duty devolving upon the city auditor, to satisfy himself before paying any demand that the money is legally due and that its payment is authorized by law, is one of great responsibility, and requires the exercise of highly important discretionary powers. In *Naylor* v. *McColloch,* 54 Or. 305, 313 (103 Pac. 68), where the city council, without legal authority, had by ordinance directed the mayor to sign a warrant, and it was sought to compel the mayor, by *mandamus,* to sign the warrant, this court said: "We think that when, in the course of general supervision, he [the mayor] found that the council had illegally ordered a warrant drawn, it was his duty to refuse to give it a currency which might mislead possible innocent purchasers into the belief that it was for the payment of a legitimate claim."

We think that the principle that was applied to the facts in that case ought to be applied to those in this, so far as the duty of the mayor in that case and that of the auditor in this is concerned, and that the principle there announced should be controlling here. When all of the provisions of the charter have been complied with, the drawing of a warrant by the auditor in payment of a legal, enforceable claim is a mere ministerial act, but in a case like this, if the facts are as alleged in the answer, for the auditor to draw a warrant, whether the council pretended to authorize him to do so or not, would be a gross dereliction of duty upon his part.

16. The municipal charter of the City of Portland, like all other municipal charters in this state, is a grant and not a limitation of power. The powers which may be exercised by a municipal corporation

have been under consideration by this court in numerous cases, and the rulings of the court upon this question have been uniform. It was held in *Beers* v. *Dalles City, supra,* that "A municipal corporation is called into being by the State for its own purposes, and it is endowed with that measure of power and authority which the act creating it confers, and such implied power, and none other as is necessary to carry into effect the powers which are expressly enumerated and delegated to it. * * 'Being the mere creature of the law, it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence.' "

In a somewhat earlier case, Mr. Chief Justice LORD said, in *City of Corvallis* v. *Carlile,* 10 Or. 139, 141, (45 Am. Rep. 134): "In construing the powers given to a municipal corporation by its charter, regard being had for the ends to be accomplished, the courts have inclined to adopt a strict rather than a liberal construction of such powers, thus applying substantially the same rule that is applied to charters of private incorporations. * * They can exercise no powers but such as are expressly conferred upon them by the act by which they are incorporated, or are necessary to carry into effect the powers thus conferred, or are essential to the manifest objects and purposes of the corporation. * * Any ambiguity or doubt arising out of the terms used by the legislature, must be resolved in favor of the public." To the same effect see *Naylor* v. *McColloch, supra; McDonald* v. *Lane, supra; Robertson* v. *Portland,* 77 Or. 121, 128 (149 Pac. 545); *Chapman* v. *Hood River,* 100 Or. 43, 51 (196 Pac. 467).

17. We think that, in conformity to the great weight of authority, the rule in this state is, a moral obligation is not a sufficient consideration to support an executory express promise, unless there has been an antecedent legal liability, which has become suspended or barred by operation of some positive rule of law, which extinguished the remedy but not the debt, or where the promisee has suffered some detriment in reliance upon the promise, or where the promisor has received an actual pecuniary or material benefit for which he subsequently expressly promised to pay: *Nine* v. *Starr,* 8 Or. 49; *Rohr* v. *Baker,* 13 Or. 350 (10 Pac. 627); *Glenn* v. *Savage,* 14 Or. 567, 577 (13 Pac. 442); *Forbis* v. *Inman,* 23 Or. 68 (31 Pac. 204); *Kiser* v. *Holladay,* 29 Or. 338 (45 Pac. 759); *Meyer* v. *Livesley,* 58 Or. 383 (107 Pac. 476, 108 Pac. 121); *Parker* v. *Daly,* 58 Or. 564 (114 Pac. 926, 115 Pac. 723, 34 L. R. A. (N. S.) 545); *Rask* v. *Norman,* 141 Minn. 198 (169 N. W. 704, 17 A. L. R. 1296, and annotation); 1 Page on Contracts, § 633.

18. In this case we are dealing with the council of a city whose powers to appropriate money are limited and restricted by the provisions of the charter under which they are acting. We are not dealing with the rights of a private individual, or of a corporation, or the power of the state legislature, or of Congress, to authorize the payment of just claims supported by a moral obligation. By subdivision 20, Section 73, of the charter, "The council has power and authority, subject to the provisions, limitations and restrictions in this charter contained * * to appropriate money to pay the debts, liabilities and expenditures of the city, or any part thereof." The words "debts, liabilities and expenditures," as used in the charter, clearly mean legal debts, liabilities and expenditures, and not

moral debts, liabilities and expenditures. The council
of the City of Portland, under its charter provisions,
has no power or authority to pay out the public
moneys of the city in payment of any obligations ex-
cept the legal obligations of the city. The payment
of obligations not founded upon a sufficient consider-
ation and not enforceable in an action at law are not
within the express or implied powers of a municipality
in this state.

19. *Mandamus* is an extraordinary remedy. It is
said to be the highest judicial writ known to our Con-
stitution and law: *Kendall* v. *United States,* 12 Pet.
524 (9 L. Ed. 1181, see, also, Rose's U. S. Notes). It
is not a writ of right. Its issuance is a matter of
discretion. "It issues to remedy a wrong, not to pro-
mote one, and will not be granted in aid of those who
do not come into court with clean hands." *United
States* v. *Fisher,* 222 U. S. 204, 209 (56 L. Ed. 165, 32
Sup. Ct. Rep. 37); *State* v. *Hare,* 78 Or. 540 (153 Pac.
790). The duty sought to be enforced must be one
which is legally defined: *State* v. *Kay,* 74 Or. 268 (145
Pac. 277).

If the allegations of the answer are true, the relator
is not entitled to relief by *mandamus,* or otherwise.
The city was under no obligation to the relator either
legal, moral or equitable. The council had no legal
authority to pay or to promise to pay him any sum
of money. He had been settled with once and paid in
full, and had given his receipt therefor. He had in
addition thereto executed a formal release forever dis-
charging the city from all further liability. The re-
lease he now tenders could have no greater efficacy
than the one he formerly gave, and if the council
could lawfully pay him the sum of money he now de-
mands, no reason could exist which would prevent a

later council from paying him the remainder of his alleged losses.

The council has no such authority. The answer states sufficient facts to constitute a good and complete defense to the writ. The demurrer is overruled, with leave to reply if the relator so desires.

DEMURRER OVERRULED. SUIT DISMISSED.

McBRIDE, J., took no part in consideration of this case.